## L. Letitia Cochran v. Warren Cochran et al.

### Filed November 8, 1894.   No. 5174.

1. **Alimony:** Jurisdiction of Courts. A court of equity will entertain an action brought for alimony alone, and will grant the same, although no divorce or other relief is sought, where the wife is separated from the husband without her fault.

2. **The district courts** of this state, being courts of general equity jurisdiction, are not limited in the exercise of such jurisdiction by statute.

3. **Husband and Wife:** Action for Alimony: Pleading. A husband deserted his wife and minor children in the state of Wisconsin, where they resided, took up his abode in this state and became a citizen thereof, and procured a divorce from his wife on the grounds of desertion, obtaining service on her by publication. The wife had no knowledge of the divorce proceedings until after the date of the decree. Two years after the date of the divorce the wife brought suit in equity against the husband for alimony. *Held*, (1) That the action was not brought under, nor governed by, section 46, chapter 25, Compiled Statutes of 1893, nor by section 602 of the Code of Civil Procedure, but was a separate and independent action based on the legal obligation of the husband to support his wife and children; (2) that the petition stated a cause of action for alimony, although it contained no allegation that the wife and children were in destitute circumstances or in actual need of support.

4. **Our divorce laws** are liberal and should be liberally construed; but they are not designed for, and should not be used to enable designing husbands, without cause, to legally discard their wives whether domiciled in this or other states, or to escape the performance of their marriage contracts.

5. **Amount of Alimony.** There is no fixed rule for determining what portion of a husband's estate should be decreed to his wife for alimony. The amount should be just and equitable, due regard being had for the rights of each party, the ability of the husband, the estate of the wife, and the character and situation of the parties.

6. **In estimating the value of a husband's property for determining the amount of alimony** that should be

awarded the wife, the court should take the value of the husband's estate at the date of the rendition of the decree for alimony.

7. The value of property acquired by a husband after obtaining a decree of divorce from his wife by exchanging for it other property which he owned at the time of obtaining such divorce should be taken into consideration by the court in determining the amount of alimony to which the wife is entitled.

8. *Smith v. Smith*, 19 Neb., 706, *Earle v. Earle*, 27 Neb., 277, and *Smithson v. Smithson*, 37 Neb., 535, followed and reaffirmed.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

The facts are set forth in the opinion.

*Bartlett, Crane & Baldrige* and *Allen, Robinson & Reed*, for plaintiff:

The courts have general equity powers under the common law to set aside decrees on the ground of fraud, and parties are not limited to the remedy provided by the statutes.    The action is not barred. (*District Township of Newton v. White*, 42 Ia., 613; *Bowen v. Troy Portable Mill Co.*, 31 Ia., 461; *Partridge v. Harrow*, 27 Ia., 97; *Whitcomb v. Whitcomb*, 46 Ia., 437; *Wisdom v. Wisdom*, 24 Neb., 551.)

It was not necessary to proceed in the same cause in which the fraudulent decree was obtained. (*Edson v. Edson*, 108 Mass., 590; *Harrison v. Harrison*, 19 Ala., 499; *McQuigg v. McQuigg*, 13 Ind., 234.)

Section 82 of the Code, providing for opening judgments rendered upon constructive service, has no application to actions for divorce. (*O'Connell v. O'Connell*, 10 Neb., 390; *Lewis v. Lewis*, 15 Kan., 181; *McJunkin v. McJunkin*, 3 Ind., 30; *Gilruth v. Gilruth*, 20 Ia., 225.)

A decree of divorce procured on service by publication, through fraud, may be set aside by a court of equity. (*Horn v. Queen*, 4 Neb., 108; *Roggencamp v. Dobbs*, 15 Neb.,

621; *Adams v. Adams,* 51 N. H., 588; *Weatherbee v. Weatherbee,* 20 Wis., 526; *Singer v. Singer,* 41 Barb. [N. Y.], 139; *Boyd's Appeal,* 38 Pa. St., 241; *Hardenburg v. Hardenburg,* 14 Cal., 656.)

An action to set aside and modify a decree of divorce to the extent of granting alimony may be maintained even after a divorce is granted. (*Earle v. Earle,* 27 Neb., 277; *Crugom v. Crugom,* 64 Wis., 253; *Cook v. Cook,* 56 Wis., 220; *Richardson v. Wilson,* 8 Yerg. [Tenn.], 67; *Cox v. Cox,* 19 O. St., 512; *M'Karracher v. M'Karracher,* 3 Yates [Pa.], 56.)

On the question of alimony we cite the following authorities: *Dickerson v. Dickerson,* 26 Neb., 322; *Smith v. Smith,* 19 Neb., 706.

*W. J. Connell* and *B. F. Cochran,* for defendants:

The decree is wrong in requiring payments of alimony to continue until the death of plaintiff. (1 Am. & Eng. Ency. Law, 483, 484.)

Where the wife acquiesces in the decree she should not be allowed alimony. (*Rouse v. Rouse,* 47 Ia., 422.)

Alimony cannot be allowed out of property acquired after divorce. (*Van Orsdal v. Van Orsdal,* 67 Ia., 35; *Kamp v. Kamp,* 59 N. Y., 212.)

Power to modify a judgment of divorce does not exist independent of statute. (*Mitchell v. Mitchell,* 20 Kan., 665.)

RAGAN, C.

On the 17th day of December, 1886, Mrs. L. Letitia Cochran (hereinafter called Mrs. Cochran) brought this suit in equity in the district court of Douglas county against Warren Cochran, Beriah Cochran and wife, Elmer G. Cochran and wife, and Katie Cochran. The substance of Mrs. Cochran's petition was as follows: That she was married to Warren Cochran in the state of Wisconsin on the 13th of March, 1867, and from that time until Novem-

ber, 1883, they had lived and cohabited together as husband
and wife; that as the fruit of such marriage there were
born to them two children, a boy and a girl, aged nineteen
and seventeen years, respectively, at the time of the filing
of said petition; that in November, 1883, and for several
years continuously prior thereto, the residence and domicile
of Mrs. Cochran, her husband, and said children was and
had been the city of Oshkosh, in the state of Wisconsin, at
which place Mrs. Cochran was in November, 1883, and
had been since to the date of filing said petition, engaged
in teaching school in the normal school of said state; that
in 1883 Warren Cochran left his home in Oshkosh, Wis-
consin, for the purpose of visiting the state of Nebraska
and there investing some money in real estate speculations,
and visiting his children (by a former wife), then residing
in said last named state; that when Warren Cochran left
Mrs. Cochran and her children in Oshkosh, in November,
1883, it was simply for a temporary purpose, and with the
intention of returning as soon as he had completed his
business and visit in the state of Nebraska; that at said
time, November, 1883, Mrs. Cochran was under contract
as a teacher in the state normal school in the state of Wis-
consin, and could not accompany her husband to the state
of Nebraska, and he did not solicit her or her children to
accompany him, and did not express any desire that they
should do so; that after Warren Cochran reached the state
of Nebraska he formed the intention of procuring a divorce
from Mrs. Cochran in the courts of Nebraska, secretly and
fraudulently, and without notice to her; that in further-
ance of said purpose Warren Cochran, on the 20th of May,
1884, brought a suit in the district court of Douglas county
against Mrs. Cochran for a divorce, alleging as grounds there-
for that Mrs. Cochran had willfully abandoned him, War-
ren Cochran, without just cause, for the period of two years
immediately preceding said 20th day of May, 1884; that
Warren Cochran brought said suit against Mrs. Cochran,

designating her by the name of "L. Letitia Cochran," and
that she had never been known by that name; that she at
all times had performed and discharged her duties to War-
ren Cochran as a dutiful, chaste, obedient, and faithful wife
to the best of her ability, and that the allegation made by
Warren Cochran in his petition for a divorce against her,
namely, that she had willfully abandoned him without just
cause, was wholly false, and known by Warren Cochran to
be false; that such allegation in said petition was fraudu-
lently made by said Warren Cochran to impose on the ju-
risdiction of the district court of Douglas county, and
secretly and fraudulently to procure a decree of divorce from
her, Mrs. Cochran, without affording her any opportunity
to appear and defend the same; that in said petition for di-
vorce Warren Cochran alleged that he was at that time, and
for more than two years prior thereto had been, a *bona fide*
resident of the state of Nebraska, and for more than six
months immediately preceding the filing of said petition
had been a resident of said Douglas county, in said state of
Nebraska; that such allegations of Warren Cochran were
false, and were made for the fraudulent purpose of confer-
ring jurisdiction on the district court of Douglas county to
hear and determine the said divorce suit brought by War-
ren Cochran against Mrs. Cochran; that at the time War-
ren Cochran brought said divorce suit, and for five years
immediately prior thereto, he had been a *bona fide* resident
of and domiciled in, the state of Wisconsin; that Warren
Cochran filed in said divorce suit an affidavit setting forth
that Mrs. Cochran was a non-resident of the state of Ne-
braska, and obtained service on her by publication; that
such notice of the pendency of said divorce suit was pub-
lished in the *Nebraska Watchman*, a paper then published
in the city of Omaha, in said Douglas county, but of limited
circulation; that Warren Cochran well knew at that time,
and at all times, that Mrs. Cochran resided in the city of
Oshkosh, Wisconsin; that such proceedings were had in

said divorce suit instituted by said Warren Cochran that the district court of Douglas county, on the 14th of July, 1884, entered a decree of divorce therein in favor of said Warran Cochran as prayed for by him in his said petition; that no personal service of summons in said suit was ever made on Mrs. Cochran, and she did not appear in said case in person or by attorney, for the reason that she had no notice of said suit; that by the said decree of divorce no alimony was awarded to Mrs. Cochran, nor any decree made respecting the custody of the two minor children; that at the date of said decree of divorce Warren Cochran was the owner of the following described real estate, situate in Douglas county, Nebraska, to-wit: Lot 27, being part of the southwest quarter of the southwest quarter of section 21, in township 15 north, and range 13 west of the 6th P. M., hereinafter called "tax lot 27;" the west half of the northeast quarter of the southwest quarter of section 4, in township 15 north, and range 13 west of the 6th P. M., hereinafter called the "twenty-acre tract;" and lots 3 and 4, in block 19, in the city of Crete, in Saline county, Nebraska, hereinafter called the "Crete property;" that said real estate was of great value; that for the purpose of cheating and defrauding said Mrs. Cochran out of her rights in said property Warren Cochran had caused said real estate to be conveyed to Beriah Cochran and Elmer G. Cochran, his sons by a former wife, and that said sons held said real estate in trust for the said Warren Cochran. The prayer of Mrs. Cochran's petition was that the said decree of divorce procured by Warren Cochran against her " be set aside and held fraudulent and void to the extent and to the end that the plaintiff may be restored to her rights of property in all of the estate of the said defendant Warren Cochran;" and she prayed for a judgment for $20,000 against Warren Cochran as alimony, and that the same might be made a lien upon the above described real estate, and that such real estate be decreed to belong to

Warren Cochran and held in trust by Beriah and Elmer G. Cochran for his use and benefit and in fraud of her rights. The answer of the defendants Warren Cochran, Beriah Cochran and wife, and Elmer G. Cochran and wife, so far as material here, admitted the marriage of Warren Cochran and Mrs. Cochran, the procuring of a divorce by Warren Cochran from Mrs. Cochran in the district court of Douglas county, July 14, 1884, and traversed all the other allegations of the petition. A default was rendered against Katie Cochran and she has no further connection with the case. The district court, on the 15th day of May, 1891, rendered a final decree in the case, in and by which it awarded Mrs. Cochran alimony as follows: $500 to be paid within three months, $500 within nine months, $500 within fifteen months, and $500 within twenty-one months from the date of the decree; and it awarded her a further sum of $250 per year, during her life, to be paid in semi-annual installments of $125 each on the first days of July and January of each year. The court further found and decreed that the real estate hereinbefore described as the twenty-acre tract was the property of Warren Cochran, and held in trust for him by the defendant Elmer G. Cochran; and that the real estate hereinbefore described as tax lot 27 was the property of Warren Cochran. From this decree all parties, except Katie Cochran, have appealed.

We will first dispose of the appeal of Warren Cochran. His counsel rely upon three arguments to reverse the decree rendered against him:

1. The first argument is, in effect, that an action for alimony or maintenance cannot be maintained in this state except as an incident to divorce proceedings, and that as Mrs. Cochran in her petition did not pray for a divorce the district court had no jurisdiction of the subject-matter of the suit. In other words, the argument is that the equity jurisdiction of the district courts of the state is limited by

statute; and that as no statute exists which expressly authorizes a suit for alimony or maintenance except as an incident to divorce proceedings, therefore the district court was without jurisdiction.

In *Cox v. Cox*, 19 O. St., 502, the facts were: A husband deserted his wife in Ohio, where both parties, up to the time of the desertion, were domiciled. The wife then brought suit for a divorce and alimony on the ground of the desertion. The husband appeared and answered, and set up as a defense to the wife's suit a decree of divorce obtained by him against her in another state. Of the pendency of this latter proceeding the wife had no actual notice, and the only jurisdiction the court had of her person was by constructive service. The court held that the domicile of the wife in Ohio remained unaffected by the desertion of her husband, and that the decree of divorce which he had procured in another state was no defense to her petition for alimony. White, J., in the opinion says: " The question therefore is whether the *ex parte* decree can be made available, not merely to effect a dissolution of the marriage, but to defeat the right of the petitioner to the alimony which the statute, upon the facts as they exist in regard to the husband's desertion, intended to provide for her? We think the decree ought not to have such effect. In arriving at this conclusion we make no distinction between a decree rendered, under the circumstances of this case, in a foreign and one rendered in a domestic forum. In either case, to give to a decree thus obtained the effect claimed for it would be to allow it to work a fraud upon the pecuniary rights of the wife. Such a result, in our opinion, is rendered necessary by no principle of comity or public policy."

*Graves v. Graves*, 36 Ia., 310, was an action by a wife domiciled in the state of New York against the husband residing in Iowa for alimony and maintenance. The wife in her petition alleged her marriage to the defendant in the state of New York, their removal soon after to the state of

Wisconsin, where they resided until May, 1869, and that she then, at her husband's request, had returned to the state of New York, where she had since remained; that the fruit of such marriage was a daughter, then aged about two years; that her husband had failed to support her and her child. To this petition the husband set up as a defense that in March, 1871, he had obtained from the plaintiff a divorce in the district court of Polk county, in the state of Iowa. The reply to this answer by the wife was that such decree of divorce was obtained by fraud; that the court had no jurisdiction of the parties, either by residence or notice. The district court rendered a judgment in favor of the wife for alimony, and the husband appealed, and the supreme court said: "A court of equity will entertain an action brought for alimony alone, and will grant the same, though no divorce or other relief is sought, where the wife is separated from the husband on account of conduct on his part justifying the separation." To the same effect see *Galland v. Galland*, 38 Cal., 265; *Whitcomb v. Whitcomb*, 46 Ia., 437; *Platner v. Platner*, 66 Ia., 378.

In *Earle v. Earle*, 27 Neb., 277, the wife brought suit in the district court of Douglas county against the husband for alimony and maintenance without a prayer for divorce. She alleged in her petition her marriage to the defendant; that the issue of said marriage was one child; that on or about the 1st day of January, 1879, her husband had sent her from him, and had since refused to permit her to return and refused to contribute anything to her support and maintenance. To this petition the husband demurred on the ground that the petition did not state facts sufficient to constitute a cause of action. The district court sustained the demurrer and dismissed the case, and the wife appealed. REESE, C. J., speaking for the court, said: " The question presented is whether or not an action for maintenance and support can be maintained in this state when not coupled with a petition for a divorce;" and the court held:

"Courts of general equity and common law jurisdiction are not necessarily limited in the exercise of such jurisdiction to the provisions of the statutes.    The law of the land having made it the legal duty of a husband to support his wife and children, courts of equity within this state have the power, in a suit by the wife for alimony and support, to enforce the discharge of such duty without reference to whether the action is for a divorce or not."

This question was ably discussed by POST, J., in *Smithson v. Smithson*, 37 Neb., 535.    The petition in that case alleged that the defendant therein, the plaintiff's husband, in the year 1878 procured a decree of divorce from the plaintiff by means of fraud and perjured testimony; that at that time plaintiff resided in the state of Pennsylvania ; that the only service upon her was by publication in a local newspaper, and that she was not aware of the whereabouts of her husband, and had no knowledge of said action or decree until the time of bringing the action, about eleven years after.    The prayer of the petition was to vacate and annul the decree of divorce procured by her husband against her and for a decree of divorce and alimony. The question discussed in the case was whether the right to vacate judgments and decrees was included within the general equity powers of the court, or whether the jurisdiction of the court in that respect was prescribed and limited by statute, and the court held: "It is not the object of the Code to abolish existing remedies in cases where no provision is made therein for the prosecution of actions. Cases involving substantial rights which are clearly outside the provision of the Code may be prosecuted in accordance with the practice previously recognized in courts of common law and equity."    It was further held that the petition in the case stated a cause of action, and that the remedy by petition for a new trial under the provisions of the Code was inadequate.

These cases are decisive of the point under consideration.

We think they are sound law and good sense and we accordingly adhere to them.

2. Section 46, chapter 25, Compiled Statutes, 1893, provides: "No proceedings for reversing, vacating, or modifying any decree of divorce, except in so far as such proceedings shall affect only questions of alimony, property rights, custody of children, and other matters not affecting the marital relations of the parties, shall be commenced unless within six months after the rendition of such decree; or, in case the person entitled to such proceedings is an infant, a person of unsound mind, within six months, exclusive of the time of such disability." Section 602 of the Code of Civil Procedure provides: "A district court shall have power to vacate or modify its own judgments or orders, after the term at which such judgment or order was made: First—By granting a new trial of the cause, within the time and in the manner prescribed in section three hundred and eighteen. Second—By a new trial granted in proceedings against defendants constructively summoned, as provided in section seventy-seven. Third—For mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order. Fourth—For fraud practiced by the successful party in obtaining the judgment or order. Fifth—For erroneous proceedings against an infant, married woman, or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings. Sixth—For the death of one of the parties before the judgment in the action. Seventh—For unavoidable casualty or misfortune, preventing the party from prosecuting or defending. Eighth—For errors in a judgment shown by an infant in twelve months after arriving at full age, as prescribed in section four hundred and forty-two. Ninth—For taking judgments upon warrants of attorney, for more than was due to the plaintiff, when the defendant was not summoned, or otherwise legally notified of the time and place of taking such judgment."

Counsel for Warren Cochran insist that as the decree of divorce in his favor was rendered on the 14th of July, 1884, and the present suit was not brought until the 17th of December, 1886, that the statute of limitations has run against Mrs. Cochran's cause of action. But this action was not brought under said section 46, quoted above, for the purpose of reversing, vacating, or modifying the decree of divorce obtained by Warren Cochran against his wife; and had the action been brought under said section for the purpose of modifying the decree in reference to alimony, the time for bringing it would not have been limited to six months from the date of the rendition of such decree, as said section only forbids an action to be brought for reversing, vacating, or modifying a decree of divorce, more than six months after its rendition, when such action affects the marital relations of the parties thereto; nor was this action brought under section 602 of the Civil Code. The petition filed in this case by Mrs. Cochran does not seek to set aside the decree of divorce rendered by the district court of Douglas county on the 14th of July, 1884. The prayer of the petition is that said decree of divorce may be held fraudulent and void to the extent and to the end that she may be restored to her rights of property.

This is a separate and independent action brought by Mrs. Cochran against her husband for maintenance or alimony. The basis of her action is the legal obligation of Warren Cochran to support her and the minor children, the fruit of their marriage. True, she has set out in her petition that Warren Cochran secretly, and for the purpose of defrauding her of her property rights, came to the state of Nebraska, and wrongfully procured from her a decree of divorce. This was simply stating the facts, and is, in effect, a statement by her that her husband had willfully abandoned and deserted her for more than two years before she brought this action. The case then stands as if Mrs. Cochran had set out in her petition her marriage to War-

ren Cochran, his desertion of and failure to support her, and prayed for alimony; and Warren Cochran, as a defense to such petition, had set up the decree of divorce rendered in his favor against his wife by the district court of Douglas county, and she had replied to such defense that she had no notice, other than constructive, of said divorce proceedings and the decree pronounced therein, and that the same was a fraud upon her rights.

3. The third argument is that the district court was wrong in awarding any alimony whatever to Mrs. Cochran. To sustain this argument it is first said that the petition does not allege, nor attempt to allege, that Mrs. Cochran or her children were in need of support. The petition does not allege that either Mrs. Cochran or her children are in destitute circumstances; but it does allege that she is the wife of Warren Cochran; that her two minor children living with her are the fruits of the marriage; and that she was at the time of bringing the action, and had been for years, engaged in teaching school for a living; and the petition does allege, in effect, that the defendant Warren Cochran had, more than two years before the bringing of the suit, abandoned his wife and minor children, and fraudulently and secretly procured from the plaintiff a divorce. We think this action should be regarded, and the rights of both Mr. and Mrs. Cochran should be determined therein, as if Mrs. Cochran had taken up her residence in the state of Nebraska, and had then brought a suit against Warren Cochran for a divorce on the grounds of desertion, with a general prayer for alimony, and we therefore think that the petition stated a cause of action.

Another argument under this head is that the evidence did not justify the district court in awarding alimony to Mrs. Cochran. It appears from the evidence in the record that on the 13th day of September, 1866, the first wife of Warren Cochran died, leaving five minor children. Six months after that date Warren Cochran was married, in

Wisconsin, to the plaintiff in this action. Mr. and Mrs. Cochran and the five children by the former's first wife then took up their abode in Wisconsin, where they lived as one family until about the year 1873. During all this time Warren Cochran divided his time between preaching, speculating, and farming; and Mrs. Cochran devoted a large part of her time to teaching school, the proceeds of the labor of both Mr. and Mrs. Cochran going to the support of the family, consisting of Mr. and Mrs. Cochran, the five children by Cochran's first wife, and the two children which had been born to Mr. and Mrs. Cochran. Some time in 1873 Mr. Cochran and the children by his first wife came to Nebraska. Mr. Cochran and said children, or some of them, began housekeeping on a farm which Mr. Cochran had purchased in Seward county, Nebraska. In the year 1874 Mrs. Cochran came on to Nebraska, and took up her residence, with her husband on the Seward county farm, where she remained until 1876, when she returned to Wisconsin to attend the golden wedding of her father and mother. It appears that, from that time until the autumn of 1878 Warren Cochran desired Mrs. Cochran to return to Nebraska, but she declined to do so. In the autumn of 1878 Warren Cochran instituted in the district court of Fillmore county, Nebraska, a suit against his wife for a divorce on the ground of desertion. This suit, however, was never prosecuted, but dismissed by Warren Cochran soon after he brought it; and he then returned to Wisconsin, and took up his residence and home with his wife and their two minor children, where he remained with them until the spring of 1883. During all this time Mr. Cochran continued preaching, and gardening or farming, and Mrs. Cochran continued teaching school. In the spring of 1883 Mr. Cochran came to Nebraska, and appears to have spent most of his time in visiting among his children by his first wife, residing here, but interested himself somewhat in preaching and in real estate specula-

44

tions.   In November, 1883, he returned to Wisconsin and
remained for some days.   While there he lived with his
family as usual.   About the 1st of December, however, he
returned to Nebraska.   At the time of his leaving he did
not request his wife and minor children to accompany him,
and it is very doubtful if his wife and minor children knew
or understood that he was leaving them permanently.
Mr. Cochran took up his abode in Douglas county, Ne-
braska, about December 1, 1883.   On March 6, 1884, he
caused the following notice to be published in the Omaha
*Bee*, a newspaper of general circulation in the state of
Nebraska, printed and published in the city of Omaha:
"Wanted—To correspond with a Christian lady of cul-
ture and refinement between the ages of 25 and 50,
without children, who could unite with a genial husband
to make his nice home in Omaha one of prosperity and
happiness.   This is in good faith, and deemed a proper
method of introduction.   Address under assumed name if
preferred.   (Signed) Otis Myrtle, Omaha, Neb."   On the
20th day of May, 1884, Warren Cochran brought suit
against Mrs. Cochran in the district court of Douglas
county for a divorce, alleging as grounds therefor that Mrs.
Cochran had willfully abandoned him without any just
cause on the 17th day of May, 1882.   He obtained service
on his wife by publication in a newspaper, and on the 14th
of July, 1884, obtained from Mrs. Cochran a decree of
divorce.   In the month of September, 1884, he was mar-
ried to a third wife, from whom he was soon afterwards
divorced, and at the time of the trial of this case was liv-
ing with his fourth wife.   When Mr. Cochran left his
wife and children in Oshkosh, in December, 1883, whatever
may have been his intention at that time with reference to
making Nebraska his permanent home, there can be no
doubt whatever that his object in settling in Douglas
county was to procure a divorce from Mrs. Cochran in
order to be free to marry again; and there can be no doubt

but that he studiously concealed from Mrs. Cochran that he intended to institute proceedings for divorce against her in Nebraska, and that he did conceal the pendency of said divorce proceedings. At the time Warren Cochran instituted divorce proceedings in Douglas county, at the time he filed an affidavit for service by publication upon his wife in that case, and at the time the decree of divorce was rendered, Warren Cochran absolutely knew that Mrs. Cochran had never abandoned him, and was then living with her children in Oshkosh, Wisconsin, where he had left them in December, 1883. The evidence in this record further shows that from the time that Warren Cochran married Mrs. Cochran, in 1867, until December, 1883, she behaved herself towards him as a chaste and faithful wife; she bore him during this time two children; and she devoted a large part of that time to teaching school, the proceeds of which went to the support of the family, consisting of the five children of Warren Cochran by his first wife, and Mr. and Mrs. Cochran and their two children. The evidence further shows that when Warren Cochran left Nebraska, in the autumn of 1878, and returned to Wisconsin to his wife and two children, he went there with the intention of permanently remaining and of making that the home of himself and Mrs. Cochran, and the two minor children; that the children by his first wife were then all about of age, and living in Nebraska; that after Warren Cochran left his wife and two children, in December, 1883, Mrs. Cochran continued to support herself and two children by teaching school; that at the time of the trial of this case she was possessed of small means, not exceeding perhaps $3,000 in value; that her health had become permanently impaired by reason of her labors in teaching school; and that she was at the time of the trial of this suit about sixty years of age and under medical treatment. The evidence further discloses that Mrs. Cochran had no knowledge or notice whatever of the pendency of the divorce

proceedings brought against her by Warren Cochran until some months after the decree of divorce had been rendered. We are of opinion that these facts establish that Warren Cochran willfully, and without any just cause whatever, deserted his wife and minor children in December, 1883, and show that Mrs. Cochran is entitled to alimony from the property of Warren Cochran. We are further of opinion that the divorce procured by Warren Cochran from his wife in the district court of Douglas county on the 14th of July, 1884, was procured by fraud and perjury, and we would not hesitate for one moment to set that decree aside if such were the prayer of Mrs. Cochran's petition. Our divorce laws are liberal and should be liberally construed, but they are not designed and must not be used for the purpose of enabling even preachers "to off with the old love and on with the new;" nor to discard faithful wives of whom they have become tired, because their freshness and bloom and health have departed, and thus leave them legally free to contract fresh marriages.

4. A further argument of Warren Cochran is that the amount of alimony awarded Mrs. Cochran is excessive. We do not think it is, for reasons that we shall state further on. The appeal of Warren Cochran is dismissed.

5. We next direct our attention to the appeals of Beriah Cochran and Elmer G. Cochran and their wives. Mrs. Cochran pleaded in her petition that for the purpose of cheating and defrauding her of her rights in the property of Warren Cochran the latter had purchased the property described in the petition and caused the same to be conveyed, without consideration, to Beriah C. and Elmer G. Cochran, his sons by his first wife. The evidence sustains this allegation of the petition, as it shows beyond dispute that the title to the Crete property is now held by Beriah Cochran, and the title to what is described herein as the twenty-acre tract is held by Elmer G. Cochran. Their appeals are, therefore, dismissed.

6. The next consideration is the appeal of Mrs. Coch-ran. Her sole ground of complaint is that the amount of alimony awarded her by the district court is too small. There is no fixed rule for determining what proportion of a husband's estate should be decreed to his wife as alimony. The amount is to be just and equitable, due regard being had to the rights of each party, the ability of the husband, the estate of the wife, and the character and situation of the parties. (*Smith v. Smith,* 19 Neb., 706.) The district court by its decree awarded Mrs. Cochran $2,000, to be paid in four equal installments, three, nine, fifteen, and twenty-one months after the 15th of May, 1891, the date of the decree, and the further sum of $250 per year, dur-ing her life, to be paid in two equal installments on the first days of July and January of each year. In July, 1882, Warren Cochran became the owner of the piece of land designated herein as tax lot 27, consisting of three and one-third acres. Warren Cochran owned this tract of land at the date he obtained a decree of divorce from Mrs. Coch-ran and at the date of the bringing of this suit. The value of this land at the date he obtained a decree of divorce from his wife, July 14, 1884, as shown by the evidence, was $3,333.33; but the undisputed evidence in the record also shows that the value of this tax lot 27 at the time of the trial was $22,983, taking the average value placed thereon by the four witnesses who testified thereto. The evidence also shows that at the time Warren Cochran obtained a decree of divorce from his wife he owned what is called in the record the "Beaver Crossing farm," in Seward county, in this state; and in 1885 he exchanged this farm for the tract of land herein designated as the twenty-acre tract, which tract he owned at the time of the bringing of this suit, although the title was held in the name of his son, Elmer G. Cochran. Averaging the values put upon this land by the three witnesses who testified as to its value, this twenty-acre tract was worth, at the time this suit was

tried, $53,320. The evidence further shows that the title of what is designated as the Crete property was in Beriah Cochran, though really owned by Warren Cochran, and that the value of this property at the time of trial was $560. The total value then of the property of Warren Cochran at the time of the trial, as shown by the evidence, was $76,953. The record discloses, however, that the title to the twenty-acre tract was in litigation, and it is impossible, in view of that fact, to say certainly what the value of Warren Cochran's interest is in that piece of land. We therefore deduct from the total value of Warren Cochran's property the value of the twenty-acre tract, and this leaves $23,633 as the value of the remainder of Warren Cochran's property. We do not think alimony should be awarded in installments during the life of a party as was done in this case. Mrs. Cochran's appeal should be sustained, we think, and the decree of the district court should be set aside as to the manner of the allowance of alimony and the amount allowed commuted to the gross sum of $6,000, payable in three equal annual installments of $2,000 each; the first installment to become due and payable January 1, 1895, another installment payable January 1, 1896, and another on January 1, 1897, each of said installments to draw interest at the rate of seven per cent per annum from this date and to be and become liens as other judgments upon the real estate of Warren Cochran.

Counsel for Warren Cochran call our attention to the rule announced in *Kamp v. Kamp*, 59 N. Y., 212, that alimony cannot be allowed out of the property acquired after the divorce. Assuming this rule to be correct, which we neither dispute nor admit, it is not applicable here. Warren owned the tract of land designated herein as tax lot 27 at the date he obtained a decree of divorce from his wife. Counsel contend that in estimating the amount of alimony to be awarded Mrs. Cochran in this suit the court should look only to the value of that tract of land at the

date of the decree of divorce, which, as already stated, was $3,333.33. We are not prepared to carry the rule announced in *Kamp v. Kamp, supra,* to this extent. Tax lot 27 is the same identical property now that it was when Warren Cochran obtained the decree of divorce from his wife, and in estimating its value for the purpose of determining what alimony should be awarded Mrs. Cochran, the court should consider its value at the time of entering the decree.

Another contention of counsel for Warren Cochran is that the court should not take into consideration the value of what is known as the twenty-acre tract, because Warren Cochran, or his son Elmer G. for him, did not obtain title to that piece of land until after the date of the divorce. We do not think this argument is sound. As already stated, Warren Cochran owned, at the time he instituted a suit for divorce against his wife, what is known in this record as the "Beaver Crossing farm," and after he obtained his decree of divorce he exchanged this farm for the twenty-acre tract. The court then should have taken into consideration the value of the twenty-acre tract at the date it rendered a decree for alimony in favor of Mrs. Cochran, for the purpose of determining the amount of such alimony. The decree of the district court as to the amount of alimony awarded Mrs. Cochran is set aside, and a decree will be entered in this court in favor of Mrs. Cochran against Warren Cochran for the sum of $6,000 alimony, as hereinbefore stated. In all other respects the decree of the district court is affirmed.

DECREE ACCORDINGLY.

IRVINE, C., not sitting.