JENNIE M. PARROTT, APPELLANT, v. GEORGE G. HOFMANN ET AL., APPELLEES.

37 N. W. 2d 199

Filed April 29, 1949. No. 32554.

*Thomas J. Sheehan, Jr.,* for appellant.

*J. C. Travis,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff seeks to establish by parol evidence an alleged agreement of the defendants to hold real estate as a constructive trust. The trial court found

generally for the defendants. We affirm the judgment of the trial court.

These facts appear in the record without serious dispute.

Plaintiff is an elderly widow, and at the time this action was brought in 1947 was 72 years of age. The defendants George G. and Bernice I. Hofmann are husband and wife. The defendant Bernice I. Hofmann is plaintiff's stepdaughter, the plaintiff and Bernice's father having married when defendant Bernice was 9 years of age. The relationship between plaintiff and defendants was friendly until 1941.

In 1936, plaintiff was the owner of a lot in the city of Omaha which had on it a building described as a combined store and residence. It was renting for $55 a month. Its value was from $4,000 to $4,500. The property was mortgaged and there were due upon the mortgage, principal and several years' delinquent interest, totaling about $3,570. There were also delinquent taxes in the amount of approximately $800. Both taxes and mortgage were subject to foreclosure, and that action was threatened, including a suggestion of a receivership.

The matter was discussed between plaintiff and defendants. Defendant George G. Hofmann talked the matter over with the mortgage holders. They agreed to discount the mortgage indebtedness, to accept a new mortgage from defendants for $3,000 and a cash payment which, when made, was for $208.25, or a total of $3,208.25.

On February 10, 1936, the parties met in an attorney's office in Omaha. The attorney had previously represented both plaintiff and defendants in separate matters. On that day plaintiff executed a warranty deed to the premises conveying the same to the defendants, subject to the mortgage, outstanding tax sale certificate, and delinquent taxes beginning with the year 1931. On that day the parties also executed what is termed an option, wherein the defendants granted to plaintiff and to Ruth G. Parrott, stepdaughter, the right to purchase the

property. The agreement contained these two provisions: "2. The option price of said property is $3208.25, and upon election to purchase, shall be due and payable in cash, together with interest at the rate of six (6%) per cent per annum on $208.25 and at the rate of five (5%) per cent per annum on the remaining $3000.00, said interest to be computed on the time elapsing between the date hereof and the date of election to purchase. In the event said first party between the date hereof and the date of electing to exercise said option shall have expended money in the repair and improvement of said premises, then and in that event there shall become due and owing on the date of said election to purchase such sum as shall have been so expended, not, however, to exceed the sum of $200.00, also such sums as shall have been expended in payment of taxes and assessments levied·against said property, or of insurance premiums and in excess of the rentals received from said property, said sums so expended for repairs, improvements, taxes and/or assessments to likewise bear interest at the rate of six (6%) per cent per annum from the date of expenditure to the date of purchase of said property under this option. * * * 5. That the option herein granted shall be for a period of two years from the date hereof, unless exercised prior thereto, and shall at the expiration of said time, without further notice from the first party to second party automatically terminate."

Likewise on February 10, 1936, defendants paid to the mortgage holders the amount of $208.25, and executed their promissory note for $3,000 secured by a mortgage on the property involved. The note bore 5 percent interest and was payable at the rate of $50 a month until principal and interest were paid.

Thereafter the defendants collected the rent upon the property, paid the delinquent and current taxes and insurance, and the new mortgage indebtedness.

In October 1936 or 1937, the year being in dispute between plaintiff and her witness, plaintiff approached a

broker asking for a loan on the property. He testified that plaintiff asked for $4,000 and that she told him she had an option to buy the property here involved. The loan was not completed.

In 1938, the rent on the property was reduced to $50 a month.

In late 1941, a dispute arose between plaintiff and defendants over amounts which defendants claimed plaintiff owed them for advances of money and items in converting other property into rental apartments. Cordial relations then ceased. Defendants requested a mortgage for the amounts involved, which plaintiff refused to give, stating that defendants had beaten her out of the property here involved. This dispute resulted in litigation in 1941 in an action by defendants against plaintiff for the recovery of money. By answer filed in that action on January 5, 1943, plaintiff admitted owing defendant George G. Hofmann the sum of $570. On April 15, 1943, plaintiff tendered to defendant George G. Hofmann the sum of $20 to apply on that indebtedness. An amended petition was filed in that action on June 7, 1943, and an amended answer and counterclaim was filed on July 2, 1943. By the counterclaim in that action plaintiff undertook to secure an accounting and recovery of the property here involved. The counterclaim was stricken upon motion.

In October 1945, defendants sold the property here involved for $5,500, the sale netting them $5,239.26. Plaintiff learned of the sale in the spring of 1946. This action was commenced in May 1947.

Plaintiff alleged that in 1936, when facing financial difficulties with reference to this property, defendants expressed a desire to help her; that defendants were to advance her approximately $200 with which to pay the delinquent installments on the mortgage indebtedness, were to collect the rents, make payments on the mortgage then aggregating approximately $3,000, make repairs, pay taxes and insurance, and to advance such sums in

excess of rents collected to pay taxes and insurance; and that "when the rents thus collected had been sufficient to pay off said mortgage indebtedness, said taxes, insurance, repairs (said repairs not to exceed $200.00), and advances and interest thereon, the defendants would convey said real estate to the plaintiff as her own and absolute property." Plaintiff further alleged that defendants stated they should have a contract wherein plaintiff for the stipulated consideration of $3,208.25 and advances for delinquent installments and taxes would have the right to repurchase the premises. Plaintiff further alleged that relying on the promises she executed and delivered the warranty deed and option. She alleged that in January 1938, she was able to pay the consideration recited in the option; that defendants objected to her paying the expenses of refinancing and agreed to "give the property back to the plaintiff when the rents therefrom had paid for it"; and that she accordingly took no steps to exercise the option agreement.

Plaintiff prayed for a decree that the defendants held the property in trust for her, for an accounting of rents and the proceeds of the sale, and for judgment for the amount found due.

Defendants pleaded that the deed and option represented the entire contract and that the action was barred by the statute of limitations.

The trial court found generally for the defendants and dismissed the action. From that decree plaintiff appeals.

We find some difficulty in determining from the petition whether plaintiff relies upon a parol agreement prior to the deed and option, or a subsequent parol agreement, or upon both of said alleged agreements. Plaintiff here contends that defendants were constructive trustees. It is noted that the prior parol agreement pleaded is substantially that contained in the option, except as to the two-year provision contained in paragraph 5 above set out.

Testifying over objection as to the prior agreement,

plaintiff said that "* * * I would sign it just like a mortgage to them, and when the mortgage was paid I could have the place back" and that the "mortgage" was to be paid "in two years." Plaintiff referred to the option to buy when undertaking to secure the loan within the two-year period. It seems clear from the record that plaintiff understood that her rights in the property were limited to a two-year period. The attorney who drew the papers testified that they represented the agreement of the parties as related to him by both plaintiff and defendant George G. Hofmann, although plaintiff denies that she had anything to do with the drafting of the papers. Her testimony as to what the prior agreement was so far as she relates it corresponds with the option, save as to the two-year clause. Admittedly she was in the attorney's office with defendants when the papers were discussed before being signed.

As to the subsequent parol agreement, plaintiff testified that in 1937, she told defendant George G. Hofmann that she could get the money to pay the indebtedness and that he told her "* * * 'Oh, just let it ride, I will never take the place away from you; just let it ride. What do you want to pay any more commission for' " and that she relied upon that statement. Defendant denies that conversation. So, as to that, there is a direct conflict. However, it is not disputed that in 1943, seven years after the conveyance to defendants and two years after she testified she told defendants they had beaten her out of this property, plaintiff by letter tendered the defendants $20 on the admitted $570 debt and promised to make like payments monthly until the total of the $570 had been paid.

Under these circumstances the trial court resolved the issues of fact against the plaintiff.

A high degree of proof is required in order to establish a trust by parol evidence. The proof must be clear, convincing, and satisfactory. Holbein v. Holbein, 149 Neb. 281, 30 N. W. 2d 899; McCormick v. McCormick, 150

Neb. 192, 33 N. W. 2d 543; Maca v. Sabata, 150 Neb. 213, 34 N. W. 2d 267.

"Actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. S. 1943, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite." O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403.

It is our conclusion that the evidence of the plaintiff fails to meet the test as to quality required under the above rules as to the essential fact questions involved.

The judgment of the district court is affirmed.

AFFIRMED.