RENA HALL, APPELLEE, v. MODERN WOODMEN OF AMERICA, A FRATERNAL BENEFIT SOCIETY, APPELLEE, IMPLEADED WITH LEOTA HERMAN ET AL., APPELLANTS.

45 N. W. 2d 630

Filed January 19, 1951. No. 32839.

*Jack L. Raymond* and *Chauncey C. Sheldon,* for appellants.

*Neighbors & Danielson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this suit in equity to recover the proceeds of a fraternal benefit life insurance policy, which, by reason of alleged equities based on contract with her father, the insured, became due and payable to plaintiff after his death.

Defendant, Modern Woodmen of America, hereinafter designated as the company, interpleaded, admitting its liability upon the policy, but alleging that it was unable to determine to whom payment should be made. Thereafter, by motion, stipulation, and order of court, the company paid the proceeds, $2,000, into court. There it was to be held and distributed in conformity with final adjudication of the respective claims thereto by plaintiff and her sisters, the other two defendants, and the company was discharged and released from all further liability. Therefore, the controversy was and now is only between plaintiff and said two defendants.

Such defendants answered, traversing generally the allegations of plaintiff's petition, and cross-petitioned, alleging that as equal beneficiaries of the policy at the death of insured, they were entitled to the proceeds. Thereto respectively plaintiff filed a traversing reply and answer, whereupon the cause was tried to the court on the merits, as in equity.

In its judgment the trial court found generally against defendants and in favor of plaintiff, primarily upon the equitable basis that her performance of contractual obligations by paying premiums on the policy for in-

sured from July 1, 1935, to July 1, 1947, as a consideration for making plaintiff beneficiary, precluded a change of beneficiary by the insured without her consent. In the light thereof, the proceeds were ordered distributed and paid to plaintiff.

Defendants' motion for new trial was overruled, and they appealed, assigning as error that the judgment was not sustained by the evidence but contrary thereto, and contrary to law. We conclude that the assignments have no merit.

The first rule to be applied is that actions in equity are triable de novo on appeal to this court in conformity with section 25-1925, R. R. S. 1943, subject, however, to the rule that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Parrott v. Hofmann, 151 Neb. 249, 37 N. W. 2d 199.

In the light of that rule, we have examined the record. It was stipulated substantially as follows: The policy was procured by insured in 1898. His wife, the original beneficiary, died August 31, 1930, and on September 10, 1930, Phyllis Allegra Dyson, another daughter of insured, was made beneficiary. Thereafter, on July 14, 1939, plaintiff was made beneficiary, and remained such until June 30, 1947, when defendants were made equal beneficiaries under the policy. On December 12, 1947, the insured died and the policy, then in full force and effect, matured. The amount of the monthly premium payments respectively increased on July 1 of each year for the period of that particular year. During the annual periods from July 1, 1935, to July 1, 1947, the amount of such monthly premium payments increased from $8.45 a month the first year to $23.45 the last. Concededly, if plaintiff paid or caused to be paid such premiums as the trial court found that she did in

conformity with competent evidence sustaining the same, then the total sum so paid by her was greater than the proceeds of the policy.

The record discloses ample competent evidence to sustain the following: Plaintiff testified, and it was not denied, that prior to May or June, 1935, she had made some premium payments on the policy for her father. At that time, she had a conversation with her father in her home where he said substantially that due to the fact that she had made some of such payments and he was not in a position to do it right then, or was not interested, for her to go ahead and make the premium payments in the future and he would either reimburse her or change the policy to her. She also testified that thenceforth she kept the policy in full force and effect by making or causing to be made all of the premium payments as proposed by insured, from July 1, 1935, to July 1, 1947. There was some evidence adduced by defendants that the father advanced some of such payments to plaintiff, but such evidence was not only highly speculative and unsatisfactory but also categorically denied by plaintiff, whose testimony was supported by other competent evidence. Whether or not plaintiff paid any such premiums out of money given or allotted to her by a brother who lived with her, without payment of board or room, and who was not a party and made no claim herein or otherwise against plaintiff therefor, is of no consequence.

Another daughter, a witness for defendants, admitted that she had a conversation with her father in 1935, in which he said substantially that he had made up his mind that he could not carry the policy any more and plaintiff had told him that if he would sign it over to her, then she would make the payments, and that he had some arrangement with plaintiff whereby if she paid the premiums he would make the insurance payable to her.

One of the defendants admitted that in 1937 she had

a conversation with her father in which he said substantially that he had already abandoned the insurance and had not wanted a thing to do with it, but plaintiff had asked for the insurance and would make payment of the premiums herself if he would turn the insurance to her.

Plaintiff's daughter, a witness for plaintiff, testified that she had a conversation with her grandfather, the insured, in 1938, at which time he said substantially that he could no longer keep the premiums up and was going to put the policy in plaintiff's name because she had been keeping it up for some time and he thought she was entitled to it. In 1940 he also told such witness that he had changed the policy to plaintiff's name and she was keeping the premiums up.

As heretofore observed, plaintiff was admittedly made the beneficiary of the policy by the insured on July 14, 1939. The record also discloses without dispute that at or about that time insured took the policy to his bank where the banker saw the policy. Insured then left it there with instructions to return it to him on his demand, or in case of his death, to deliver it to plaintiff. There the policy concededly remained until in June 1947, when the insured himself removed it and had the beneficiary changed from plaintiff to defendants on June 30, 1947.

Early in July 1947, having received her school bonus check, plaintiff went to the office of the company's agent to pay him a few monthly premiums, which, by prearrangement, had already been advanced and paid by him as creditor for plaintiff. She then learned for the first time that insured had changed the policy by making defendants equal beneficiaries thereof. Admittedly, at or about that time, the father and defendants as well, were bitter against and unfriendly with plaintiff as the result of litigation with them, then concluded, which grew out of the mother's estate, of which plaintiff was administratrix.

Both defendants knew that the father was unable to pay the premiums, both of them knew that the policy was changed from plaintiff to themselves, and at least one of them knew that plaintiff was paying the premiums under the agreement aforesaid with insured. From July 1, 1947, to December 12, 1947, defendants, then equal beneficiaries, each paid one-half of the monthly premiums.

In the situation presented, we conclude that the offer of insured to reimburse plaintiff or make her beneficiary of the policy if she would make the premium payments in the future, was simply a promise for an act, which offer plaintiff accepted in conformity therewith by performance of the act. Insured, being unable to pay the premiums, much less reimburse her, elected to make plaintiff the beneficiary of the policy in conformity with his own proposal and promise, after which for eight years, plaintiff, relying thereon, continued to fully perform by making the payments, thereby keeping the policy at all times in full force and effect. There was nothing left to implication.

Contrary to defendants' contention then, we have more than a case wherein plaintiff voluntarily paid the premiums or paid them under an agreement that she would simply be reimbursed, thereby placing her in the class of a simple creditor of insured or his estate. In the final analysis, we have presented here, as established by competent evidence, clear, satisfactory, and convincing in character, a lawfully executed contract supported by a valuable consideration already performed and thus binding upon the insured, which in equity precluded him, without plaintiff's consent, from exercising the right to change beneficiaries to defendants who had no equities superior to that of plaintiff. There is ample evidence and authority, including our own, to sustain that conclusion and support the trial court's judgment.

In that connection, it is true, as argued by defendants that: "As a general rule a member of a mutual benefit

insurance society has no property interest in the benefit to be paid, but merely a power to appoint someone to receive it." 46 C. J. S., Insurance, § 1558, p. 943.

It is also true that: "The insured generally may designate a new beneficiary without the consent of the original beneficiary in the absence of a contrary provision in the statutes, or in the society's charter or laws, or in the certificate of insurance." 46 C. J. S., Insurance, § 1567, p. 950.

However, in 46 C. J. S., Insurance, § 1567, p. 951, under the headnote "Exceptions and Limitations," it is said: "Equities in favor of the beneficiary, including equities based on contract, may preclude a change of the beneficiary without his consent."

Also, as stated in 46 C. J. S., Insurance, § 1590, p. 980: "A beneficiary who survives the insured is entitled to the proceeds against all other persons, except where there are peculiar equities or independent agreements."

As stated in Columbian Circle v. Mudra, 298 Ill. 599, 132 N. E. 213, 18 A. L. R. 378, a case strikingly similar to that at bar: "The rule in this State is, that while the assured may, in the absence of intervening equities, change at will the beneficiary named in his insurance policy, equitable rights may be acquired in a beneficiary certificate of insurance which a court of equity will recognize and enforce. (Bispham's Eq. 162; Royal Arcanum v. Tracy, 169 Ill. 123; McGrew v. McGrew, 190 id. 604.) If there was an agreement between the assured and appellee that she should receive a beneficial interest in the certificate of insurance upon and by reason of payments by her of the premiums, dues or assessments, such contract was binding on the assured and deprived him of the right to change the beneficiary without appellee's consent."

As stated under "General rules" in Annotation, 18 A. L. R. 383, following the afore-cited case, and citing many others in support thereof: "Where the original beneficiary in a mutual benefit certificate is named

pursuant to an agreement, express or implied, that he shall be so named in virtue of some consideration moving from him, it is held by the weight of authority that he acquires a right that cannot be defeated, which will be recognized—at least, on principles of equity—as against a substituted beneficiary having no superior equity, notwithstanding the general rule that the beneficiary of such certificates does not acquire a vested right."

In Kernan v. Modern Woodmen of America, 120 Neb. 333, 232 N. W. 590, dated October 17, 1930, denying recovery by plaintiff, this court held in effect that the issues and facts, having a similarity in material respects with those at bar, were controlled by section 44-1217, Comp. St., 1929, which provided: "No contract between a member and his beneficiary that the beneficiary or any person for him shall pay such member's assessment and dues, or either of them, shall deprive the members of the right to change the name of the beneficiary." However, it is interesting to note that at the very next session of the Legislature such section was repealed by Laws 1931, Chapter 86, p. 225, and in lieu thereof, section 7, p. 228, now section 44-1041, R. S. 1943, was enacted. That section, after designating possible beneficiary classes, of which plaintiff was one, provides: "Within the above restrictions, each member shall have the right to designate beneficiaries, and from time to time have the same changed, in accordance with the laws, rules or regulations of the society. *No beneficiary shall have or obtain any vested interest in such benefit until the same has become due and payable upon the death of such member.*" (Italics supplied.) As hereinafter observed, that section does not preclude plaintiff's right to recover, as argued by defendants.

In that connection, we call attention to McLean v. Fidelity Life Assn., 139 Neb. 751, 298 N. W. 700, wherein this court, under circumstances comparable with those at bar, construed and applied the foregoing provisions

of the statute, and in doing so concluded that they did not preclude the court "from exercising its equity power to direct the equitable distribution of the proceeds of a benefit certificate which have been deposited in court pending litigation between claimed beneficiaries."

Likewise, under comparable facts and circumstances, this court said in Williams v. Volz, 131 Neb. 392, 268 N. W. 300: "We admit that the by-laws and rules of the organization give the right to the insured to change to a new beneficiary at any time, but this applies to a case where a beneficiary has been voluntarily and gratuitously designated, and who has acquired no interest whatever in the certificate. * * * We believe that the proceeds of this policy, having been paid into court by the insurance order, constitute a constructive trust to be applied by the court in carrying out whatever agreement the court shall find, after a new trial, was made between these sisters."

In McCleery v. Woodmen of the World, 136 Or. 407, 297 P. 345, relied upon by this court in McLean v. Fidelity Life Assn., *supra,* it was said: "In so far as it appears in the record, there is no prohibition against the member making such a contract or changing the beneficiary in his certificate. The statute providing that 'no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member,' does not preclude the making of the contract mentioned. The beneficiary named in the certificate, D. W. McCleery, did not have a vested interest in the benefit until the death of Young. His rights, after the contract was made and performed up to and until the death of Young, were in the nature of a potential or contingent interest. He had an expectancy or equitable interest in the benefit certificate: 8 Words and Phrases, 7303. See also Ryan v. Woman's Ben. Ass'n. of Maccabees, 209 Mo. App. 515, (237 S. W. 224); Wist v. Grand Lodge A. O. U. W., 22 Or. 271, 277, 278, (29 P. 610, 29 Am.

St. Rep. 603); United Artisans v. Cronise, 88 Or. 602, 608, (172 P. 109, L. R. A. 1918D, 1131).

"* * * Such equitable right of McCleery should be recognized and protected. The member Young was estopped from changing the beneficiaries' interest in the certificate in violation of his contract. See Bacon's Life and Accident Insurance (4th Ed.) § 403. We quote a part of that section:

" 'In these cases it is not held that, under the contract, the beneficiary has acquired a vested right, but the member has parted with a right which he otherwise might have exercised.' " See, also, Stronge v. Knights of Pythias, 189 N. Y. 346, 82 N. E. 433, 12 L. R. A. N. S. 1207, 121 Am. S. R. 902; Savage v. Modern Woodmen of America, 84 Kan. 63, 113 P. 802, 33 L. R. A. N. S. 773; Coffman v. Security Benefit Assn., 131 Kan. 328, 291 P. 753; Tivis v. Hulsey, 148 Kan. 892, 84 P. 2d 862.

Without citation of any authorities, defendants also argued that section 44-1029, R. S. 1943, precluded any recovery by plaintiff. We decide otherwise.

That section provides: "No money or other benefit, charity, relief or aid to be paid, provided or rendered by any such society shall be liable to attachment, garnishment, or other process, or be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay *any debt or liability of a member or beneficiary,* or any other person who may have a *right thereunder,* either before or after payment." (Italics supplied.)

It will be noted that the words "right thereunder" appearing in such statute refer to proceedings to collect "any debt or liability of a member or beneficiary" and not to a contest of equitable cognizance and determination involving the relative rights of rival claimants as beneficiaries to the proceeds of the policy already matured and in the hands of the court for distribution, as equity may require.

This court has not heretofore construed or applied

such statute, but other jurisdictions have done so in a manner contrary to defendants' contentions.

The Tennessee court, in construing and applying a statute identical with our own, said in Allen v. Cunningham, 143 Tenn. 11, 223 S. W. 450: "We are of the opinion that this statute has reference to general and ordinary debts of the insured or beneficiary, and not to assessments or money paid by which the benefit is created and made possible. Especially is this true where it appears that the insured assigned or had transferred to the person paying the dues or assessments the certificate for the primary and express purpose of reimbursing him for the payments made, though it turned out that the assignment was void. We think that a court of equity has the power, notwithstanding the statute referred to, to compel the complainants, who are seeking its aid, to do equity by reimbursing the defendant, who contributed his money to the creation and preservation of a fund, which, owing to the void assignment or transfer of the certificate to the defendant, inured to complainants' benefit."

In Tivis v. Hulsey, *supra*, it was argued that under a Kansas statute of like import with our own, the impounded proceeds of the policy involved were exempt from payment of claims like that made herein by plaintiff, against either the insured or the beneficiary last named in the policy. In concluding otherwise, the court said: "We are concerned here with whether plaintiff can recover against defendant in this action. In this case the insurance company had paid the amount due on the policies. No one has any controversy with it; it is not a party to this action.

"The action is between rival claimants of the proceeds of the policies. In such a case, where rights are claimed by reason of a contract made with the assured, the contest involves the relative rights of the claimants and may become one purely of equitable cognizance and determination. (Brown v. Modern Woodmen, 97 Kan.

665, 156 Pac. 767.) * * * In such a case the proceeds of the policy become a trust fund, which may be followed by the rightful claimant. (Exchange State Bank v. Poindexter, 137 Kan. 101, 19 P. 2d 705.)"

Such conclusions also conform to the rule that: "The district courts of this state, being courts of general equity jurisdiction, are not limited in the exercise of such jurisdiction by statute." Cochran v. Cochran, 42 Neb. 612, 60 N. W. 942. See, also, Burnham v. Bennison, 121 Neb. 291, 236 N. W. 745; Wassung v. Wassung, 136 Neb. 440, 286 N. W. 340.

In the light of what has already been said, we are not required to discuss or decide whether or not plaintiff had an equitable lien upon the proceeds involved.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.