F. M. McConnell *et al.* v. F. D. Wolcott.

No. 13,846.   (78 Pac. 848.)

SYLLABUS BY THE COURT.

1. PROCEEDING IN AID OF EXECUTION—*Effect of Notice to Appear and Testify.* The service on a judgment defendant of a notice requiring him to appear and answer questions regarding his assets, under the statute relating to supplementary proceedings in aid of execution, no order being made forbidding the transfer or other disposition of his property, does not give plaintiff a lien on funds held by the defendant, nor prevent the defendant from withdrawing such funds from the reach of his creditors by investing them in a homestead.

2. HOMESTEAD AND EXEMPTIONS—*Purchase by Insolvent Debtor—. Exemption.* An insolvent debtor may successfully assert a claim of exemption as to a homestead purchased with the proceeds of non-exempt property, where there are no peculiar equities in favor of existing creditors, even though such purchase be made for the very purpose of acquiring property that should constitute a homestead, and as such be beyond the reach of creditors.

3. —— *Use of Proceeds—Purchase with Other Funds.* The fact that a husband and wife sell their homestead, which would be covered by the lien of a judgment except for being exempt, and receive and use the purchase-money, does not prevent their afterward acquiring with other funds another homestead, which shall be exempt from sale to satisfy such judgment.

Error from Rice district court; ANSEL R. CLARK, judge. Opinion filed December 1, 1904. Reversed.

*John D. Milliken,* for plaintiffs in error.

*C. F. Foley,* and *Samuel Jones,* for defendant in error.

The opinion of the court was delivered by

MASON, J. :   F. D. Wolcott recovered a judgment on January 20, 1902, against F. M. McConnell and Florence McConnell, his wife, for $2206.50. An execution was issued January 29, 1902, which was returned Feb-

ruary 18, 1902, wholly unsatisfied for want of property on which to levy. February 18, 1902, the plaintiff instituted supplementary proceedings in aid of execution by filing an affidavit that the defendants had property which they unjustly refused to apply toward the satisfaction of the judgment, and an order was issued commanding them to appear before the probate judge on February 20 to answer questions touching their property, which was served upon them on the same day. At the time of the service Mrs. McConnell had in her possession a draft for $1500. Before the time set for their examination the defendants used this draft for the purchase of a residence, into which they at once moved, claiming it as a homestead. These facts being developed upon the hearing before the probate judge, the plaintiff asked that the real estate so acquired and held be subjected to the payment of his judgment. This relief was refused by the probate court, but upon appeal the district court reversed the decision and ordered the property sold to pay the judgment. This proceeding is brought to review the action of the district court.

It is claimed by the defendant in error that the service of the order for the judgment defendant to appear and submit to examination as to her property gave rise to a new status, and that from that moment no transfer of her funds could be operative as between her and the judgment plaintiff; that the draft in her hands was in effect impressed with a lien in his favor. This contention finds much support in the authorities. In volume 24 of the American and English Encyclopedia of Law, first edition, at page 656, it is said :

"The creditor, by instituting supplementary proceedings, acquires a lien upon the equitable assets of the debtor, which takes effect from the time of service of the order."

McConnell v. Wolcott.

The decisions bearing upon the matter are collected and classified in the notes to the paragraph in which this language is used. ( See, also, 21 Cent. Dig. cc. 2064–2066 ; *Billson v. Linderberg*, 66 Minn. 66, 68 N. W. 771.)   The principle announced is seemingly so strongly entrenched in the adjudicated cases that the argument may plausibly be made that the question should be regarded as settled, and the reasoning upon which it is based no longer open to inquiry.   This consideration no doubt had great weight with the learned trial judge — a supposition which is strengthened by the circumstance that upon a first submission he approved the ruling of the probate court, and only reached a contrary conclusion upon a rehearing, after he himself had granted a new· trial.   Upon a close examination, however, we think the force of this line of decisions is less than it might at first appear. The doctrine referred to originated in New York, and, so far as it is applied in cases arising under statutes similar to ours, has been authoritatively approved only in the states of Wisconsin and Minnesota, and there only in decisions made without a full discussion, based expressly upon the prior holdings of the New York courts.   The earliest judicial expression in the matter was made by the supreme court of New York in 1850, in *Porter v. Williams and Clark*, 5 How. Pr. 441, a special-term decision by one judge, in which it was said :

"The code is silent as to the time when the judgment creditor shall be deemed to have acquired a lien upon his debtor's equitable effects ; but I think the order for his examination, made under the 292d section [equivalent to section 483 of the Kansas code], should be construed to give the creditor the same lien which he acquired under the former practice, by the commencement of a suit by creditor's bill."

An appeal was taken to the court of last resort and the judgment of the lower court was affirmed, but upon grounds in no way connected with the proposition stated in the portion of the opinion quoted, which was entirely ignored.

In October, 1857, the question again arose, this time before the supreme court for the fifth judicial district. (*Voorhees v. Seymour*, 26 Barb. 569.) In the first paragraph of the syllabus (one judge out of four dissenting) it was held :

"A judgment creditor, by commencing supplementary proceedings against the judgment debtor under section 292 of the code, and obtaining an order for the examination of the debtor, does not acquire a prior right to, or lien upon, the equitable assets of the debtor."

The opinion presents the fullest discussion of the question under consideration to be found in any of the reports. The earlier case, so far as it bore upon this matter, is there disapproved, branded as *dictum*, and held to be unsound in principle, attention being called to the fact that the affirmation of the judgment was based upon other considerations. Nevertheless, in March, 1858, in the case of *Edmonston v. McLoud*, 16 N. Y. 543, when the court of appeals was first required to pass upon the question, it followed *Porter v. Williams and Clark*, *supra*, without any discussion and without referring to *Voorhees v. Seymour*, *supra* (which seems not to have been cited in the briefs, perhaps because then so recently announced), it apparently being assumed that the affirmance of the former case involved the adoption of all the views there expressed. It is therefore obvious that the construction placed upon the statute by an inferior court, through a misapprehension, and without independent examination

by the highest court, became the settled law of the state.

In view of this situation it is probable that the question might thereafter have received further investigation upon its merits by the New York court of appeals, except for a new condition affecting the matter, arising from subsequent legislation. In fact, a doubt of the soundness of the accepted doctrine was expressed in *Becker v. Torrance*, 31 N. Y. 631; but in 1862 it was decided, in *Van Alstyne v. Cook*, 25 N. Y. 489, that by the service of an order for the examination of a judgment defendant in supplementary proceedings no lien was acquired upon such personal property of the defendant as was subject to execution, the question as to the effect upon other personal property being explicitly left for future determination. In view of this decision the legislature in the same year amended the statute by adding provisions giving in express terms a lien, defining its extent, and specifying the time when it should take effect. In consequence of this amendment it became unnecessary to make any further judicial inquiry concerning the interpretation of the law as it was originally enacted.

A precedent so established has little force as an authority, and, unless justified by sound logic, it ought not to be followed. The argument offered in its support is this : The filing of a creditor's bill gave the judgment creditor a lien upon the equitable assets of his debtor, and, inasmuch as the statutory remedy is a substitute for that in equity, the commencement of proceedings under it should be given the same effect. That such a lien results from the beginning of a creditor's suit is well settled. (12 Cyc. 61.) It may also be granted that the statutory proceeding, although not a complete substitute for the equitable

remedy, in the sense of precluding resort to the latter, is so nearly akin to it that it should by analogy be governed by the same rules, except where a special reason to the contrary exists. The reasons for the enforcement of the lien in the equity practice are that the superior diligence of the creditor who first takes steps to enforce his demand out of the debtor's intangible assets should be rewarded by securing to him the fruits of his own efforts, and that the doctrine of *lis pendens* applies from the time a bill is filed. It has been said with much plausibility that in order for a creditor's bill to give a lien it must point out specific property sought to be reached (12 Cyc. 64, e), and a distinction might be made in this regard in the case at bar.

But a more obvious consideration invites attention. The statute, while in a sense providing a substitute for the suit in chancery, purports to afford a complete remedy in itself. One of its provisions (Code, § 491; Gen. Stat. 1901, § 4968) is that "the judge may also by order forbid a transfer or other disposition of the property of the judgment debtor not exempt by law, and any interference therewith." Now, this right to an order which must have the effect of preserving the status of the defendant's property is not an outside matter. To avail himself of it the plaintiff need not resort to equity, or begin any new action. It is afforded by a part of the very statute under which he is proceeding. He may procure an order for the examination of the defendant, with or without the further order forbidding the transfer of any property. If the mere order for such examination operates as a lien on the debtor's assets it is difficult to see the purpose of the provision for an order against a disposition of his property, or the effect of such an order

when made. In *The Union Bank of Rochester v. The Union Bank of Sandusky*, 6 Ohio St. 254 (citing with approval *Porter v. Williams, supra*), it was said that where a third person alleged to be indebted to the judgment defendant is served with notice to appear and answer as to such matter, no order forbidding a transfer need be made in order to bind any property in the hands of such third person, who is in effect a garnishee. The conclusion announced was mere *dictum*, for the court held that no valid notice of any kind had been served; but it would not be difficult to make a distinction between that case and the one at bar. Such a distinction was recognized by the federal circuit court for the southern district of Ohio in *Gregory v. Hewson and Holmes*, 1 Bond, 277, Fed. Cas. No. 5801, where it was said:

"The supreme court of Ohio, in the case of *The Union Bank of Rochester v. The Union Bank of Sandusky*, 6 Ohio St. 254, hold that where, at the instance of a judgment creditor, a third person had been cited to answer as to property and effects held by him belonging to the judgment debtor, the notice operated as *lis pendens*, and that the party, from the time of the service of the notice, could make no disposition of the property or effects in his hands. But clearly this principle does not apply to the case of a judgment debtor, as to whom there has been a mere order for his examination, without an order restraining him from disposing of his property."

Cases may be imagined in which the judgment creditor, while desirous of investigating his debtor's real condition, might not wish to tie his hands by impressing a lien upon his assets, and in which the interests of both might be jeopardized if such a result were the necessary consequence of taking the first step toward such an inquiry. Inasmuch as the statute by specific provision affords ample means by which

the judgment plaintiff may prevent the transfer by the defendant of any property pending an inquiry into his condition, we see no occasion for holding that such a result will follow where this provision is not invoked. Since in this case no order was made or asked against the disposition by defendant of the draft or other property in her possession, we conclude that, notwithstanding the service upon her of the notice requiring her to appear and answer as to her property, she was at liberty to purchase and pay for a homestead, which could not be sold for the satisfaction of the judgment.

A further argument is made that in view of all the circumstances of the case, irrespective of any question of a specific lien, the property claimed as a homestead ought to be subjected to the payment of the plaintiff's judgment for the reason that to refuse this is to allow the defendants to make the exemption given them by the law a means of defrauding the plaintiff. It appears that, prior to the term of court at which the judgment was rendered, the defendants sold some real estate which they owned, for the express purpose of placing their property beyond the reach of the expected judgment; that after the term began they sold another tract, which it is claimed was their homestead, and which, but for its homestead character, would have been subject to the lien of the judgment; that the proceeds of these sales were squandered by defendant F. M. McConnell before his examination took place; that the $1500 draft was not the proceeds of the sale of any of the tracts just referred to, or of any homestead, but was derived from the sale of property belonging to defendant Florence McConnell, made several years before; that the draft was used for the purchase of the real estate in question for the

purpose of exchanging it for property that should constitute a homestead and be beyond the reach of an execution on plaintiff's judgment.

We do not think that these facts make the investment of the wife's funds in a homestead a fraud upon plaintiff. The prior sale of other real estate with a view to evade the enforcement of the judgment had no effect upon any question relating to the exemption of the homestead. The plaintiff had no peculiar claim upon the draft with which the homestead was purchased, such as, in the case of *Long Brothers v. Murphy*, 27 Kan. 375, was held to authorize a creditor to hold for the payment of his demand property otherwise exempt. The homestead exemption may be asserted even as to property purchased by an insolvent debtor with the proceeds of non-exempt property, in the absence of any special equity existing in favor of a creditor. (15 A. & E. Encycl. of L., 2d ed., 617.) The fact that the exchange may have been made for the very purpose of acquiring exempt property does not alter the rule. (*Jacoby v. Parkland Distilling Co.*, 41 Minn. 227, 43 N. W. 52; *Paxton v. Sutton*, 53 Neb. 81, 73 N. W. 221, 68 Am. St. Rep. 589.) The fact that the defendants disposed of one homestead at a time when they were enabled to convey a good title only because it was exempt did not preclude their subsequently acquiring another. At the time of the purchase of the property in question they had no homestead. Nor was any claim of exemption asserted with regard to the proceeds of the former homestead on the theory that it was to be devoted to the purchase of a new one. The sale of the first homestead, so far from being a fraud upon plaintiff, was theoretically beneficial to him, as it converted exempt into non-exempt property. In this situation it was competent

for the defendants to acquire a new homestead with any means they might have. To hold otherwise would be to say in effect that if an insolvent head of a family sells his homestead, being enabled to do so by reason of its being exempt, and spends the purchase-money, he may never thereafter acquire another homestead as against creditors whose claims existed at the time of the sale. This, we think, is not the law.

The judgment is reversed, and the cause remanded for further proceedings in accordance herewith.

All the Justices concurring.