No. 30,939.

THE EXCHANGE STATE BANK, *Appellee*, v. FRANCES POINDEXTER, *Appellant*, et al.

(19 P. 2d 705.)

Opinion filed March 11, 1933.

*H. M. Funston* and *Wilbur S. Jenks,* both of Ottawa, for the appellant.

*David F. Carson* and *William Drennan,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action in equity to have a trust de-

clared and impressed upon the proceeds of three life insurance policies upon the life of James Poindexter, payable to his wife, because the funds used by the insured to keep the insurance in force were fraudulently obtained from the plaintiff bank.

The action was brought against Frances Poindexter, the wife of the insured, and the insurance company. The petition alleged that she conspired with her husband in his obtaining two loans from the bank, one on October 3, 1929, for $2,123, and the other on April 10, 1930, for $1,019.67, representing at the time that he was the owner of 150 head of cattle and the money was to be used for feeding and caring for them, while he, in fact, owned no cattle at that time but used the funds borrowed to pay premiums on his insurance policies in favor of his wife, and that he was at that time insolvent.

The answer of Frances Poindexter denied that she conspired with her husband to borrow the money from the plaintiff bank, and alleged that she had no knowledge or notice that he had borrowed money from the bank on October 3, 1929, until March, 1930, and denied that she had anything to do with the spending of the money borrowed or paying any of it for insurance premiums, and alleged that her husband had taken out these policies in 1897 and had regularly paid the premiums on them since that time; that the proceeds of the policies were exempt to her under the insurance laws of the state of Kansas.

The insurance company did not answer, but by leave of court paid into court the full value of the three policies in the sum of $6,018.

The trial court found in favor of the plaintiff, and the defendant appeals.

The following stipulation was filed before any evidence was introduced:

"That James Poindexter was insolvent at the time of his death; that insurance with The Bankers Life Company, as claimed, has been paid into this court, and $2,500 of this amount has subsequently, by agreement, been paid to Mrs. Poindexter; that James Poindexter died on the 21st day of July, 1930; James Poindexter on November 2, 1897, secured three policies of insurance with The Bankers Life Company of Des Moines, Iowa; these were life policies—whole life policies, subject to assessments, payable at death; that premiums were not of a fixed amount, but were variable depending upon deaths; the premiums were payable quarterly and if the premiums were not paid when due or within thirty days thereafter, subject to statutory notice, the policies would lapse; the policies were originally made payable to Lilie J. Poindexter, wife of James Poindexter, and she died shortly thereafter: in

1904 James Poindexter was married to the defendant, Frances Poindexter, and thereafter, in 1926, with the consent of the insurance company, Frances E. Poindexter was named as the beneficiary in the policies; these policies were for the sum of $2,000 each; and at the time of the death of James Poindexter on July 21, 1930, there was due on the policies the sum of $6,018, which amount has been paid into court; that $2,500 of the amount, under order of the court, has been paid to the defendant, Frances E. Poindexter; that during the life of James Poindexter, for the purpose of keeping these policies in effect, there had been paid the sum of $3,208.80; they were caused to be paid by James Poindexter, but the last two premiums were paid by money obtained from the bank; that the last two assessments, one of $96 on January 3, 1930, and one of $90 on April 3, 1930, were paid out of the funds secured by a loan from the plaintiff and deposited with the State Bank of Ottawa, checks being drawn by James Poindexter upon his account in State Bank of Ottawa; the money that was borrowed at the bank was deposited in his account in the bank in Ottawa, and then from that fund so deposited these two last payments were made."

The trial court included the following findings in the journal entry of the judgment as a part thereof:

"The court further finds, that in the lifetime of James Poindexter, he fraudulently obtained money from the plaintiff in the sum of twenty-one hundred twenty-three and no/100 dollars ($2,123.00) on the 3d of October, 1929, and ten hundred nineteen and 67/100 dollars ($1,019.67) on the 16th of April, 1930, and that plaintiff is entitled to recover in this cause the sum of thirty-five hundred and fifty-two and 06/100 dollars ($3,552.06); and that said sum is a lien upon the money now in the hands of the clerk of this court to satisfy said claim.

"The court further finds, that out of the money fraudulently obtained by the said James Poindexter, deceased, said James Poindexter did, on the 3d day of January, 1930, pay to The Bankers Life Insurance Company, the premiums and assessments then due upon the aforesaid three policies of insurance, amounting to ninety-six and no/100 dollars ($96) and did on the 23d day of April, 1930, pay to the said The Bankers Life Insurance Company, the further sum of $90 out of the moneys fraudulently obtained from the plaintiff as aforesaid, on payments of further premiums and assessments due upon the above-described policies.

"The court further finds that at the time the said James Poindexter, deceased, fraudulently obtained the aforesaid moneys from the plaintiff, he and the defendant, Frances Poindexter, had practically no money other than that so fraudulently obtained; and that they used the money so obtained to defray their living expenses up to the date of the death of said James Poindexter.

"The court further finds that the defendant, Frances Poindexter, was aware of the fact that she and her husband, James Poindexter, had no money for defraying their living expenses, and for the payment of the premiums and assessments upon said policies as aforesaid, and was charged with notice and knowledge that the money which they were so using had been obtained by James Poindexter in some manner other than through their ordinary sources

of income; and she knew that the premiums and assessments of said policies could not be paid by any means except through money which her husband had obtained, and which proved to have been obtained by fraud upon the plaintiff."

Two major questions are involved: *First*, whether or not a resulting trust is shown by the evidence and findings, and, *second*, were the proceeds of the policies exempt under R. S. 1931 Supp. 40-414?

It may at once be conceded that, generally, under the statute above cited the proceeds of a life insurance policy are exempt to a wife of the insured as one having an insurable interest in the life of her husband as against the claims of creditors of the insured, and they shall inure to the sole and separate benefit of the beneficiary named in the policy. This statute has been applied and upheld in many decisions of this state, among which is *Emmert v. Schmidt*, 65 Kan. 31, 68 Pac. 1072, cited by the appellant.

The acquiring or setting aside of a homestead in fraud of creditors has always been condemned in Kansas, notwithstanding the exemption law in relation thereto. In the case of *Kline v. Cowan*, 84 Kan. 772, 115 Pac. 587, it was said:

"To impress land with a homestead character some real interest or ownership must exist, and a mere gratuitous grantee of one who conveys to defraud his creditors does not acquire any real interest or ownership, and such grantee is not entitled to an injunction against the sale of such land in satisfaction of the grantor's debts." (Syl. ¶ 2.)

A further citation by the appellant furnishes the connecting link between these two questions here for consideration and suggests a possible modification of the exemption provision. It is from 25 C. J. 74, as follows:

"That premiums were paid while the insured was insolvent does not affect the exemption rights of the beneficiary. Even where the money to pay the premiums was secured by the debtor through fraud, the widow's exemption in the proceeds of the policy will not be affected thereby, if she herself is not a party to the fraud."

While the trial court did not find the wife in this case to have conspired with her husband in defrauding the plaintiff bank, it by no means exonerated her as a party to that fraud, when it found she was aware of the fact that she and her husband had no money for defraying their living expenses and for paying premiums on the policies, and she was charged with notice and knowledge that the money which they were so using had been obtained by her husband in some manner other than through their ordinary sources of income.

The exemption of insurance money to the beneficiary is no more sacred in this state than the exemption of the homestead, and where the element of fraud enters into the transaction by which the homestead is acquired, the exemption fails.

"We do not think that a debtor being absolutely insolvent, and having his creditors pressing him for the payment of their claims, and fully cognizant of his inability to pay such debts, can, to defraud his creditors, transfer possession of goods purchased by him upon credit and take in exchange therefor land, either in his own name or in the name of his wife, and then claim the same as exempt as a homestead against such existing creditors. 'A party cannot turn that which is granted him for the comfort of himself and family, into an instrument of fraud.'" (*Long Brothers v. Murphy,* 27 Kan. 375, 380.)

Unless the wife, as beneficiary in a life insurance policy on her husband's life, pays the premiums out of her own funds, the proceeds of the policy, like the title to the homestead, is a gift to her.

The case of *Tootle, Hanna & Co. v. Stine,* 31 Kan. 66, 1 Pac. 279, nicely distinguishes as to the facts in the case just cited by showing that the goods in the last case fraudulently procured by the husband did not enter into the consideration for the purchase of the homestead.

Appellant cites the case of *Bennett v. Rosborough,* 155 Ga. 265, which is fully applicable to the facts in this case, except that there is no showing as to the knowledge or notice of the wife, who was the beneficiary, as to the fraudulent conduct of the husband. It was there held she was entitled to collect the proceeds of the policy upon the death of her husband, although at the time the insurance was obtained and the premiums paid he was insolvent and the premiums were paid with money stolen by him from his creditors. There is a very strong dissenting opinion attached. (See Annotations, 26 A. L. R. 1408.)

In the case of *Truelsch v. Miller,* 186 Wis. 239, it was said—

"The right to follow the embezzled money was not lost because such money was used to pay premiums on life insurance policies payable to the wife, notwithstanding sec. 2347, Stats., the wife not being an innocent purchaser.

"One who has become a constructive trustee by reason of wrongfully receiving or securing the property of another cannot escape the consequences of his acts by changing the form of the property thus acquired; and as between him and the *cestui que trust* the latter may pursue the funds into the new investment and charge the same with the trust.

"Statutes guarding the rights of married women in insurance policies and homesteads are liberally construed, but they are not designed to encourage fraud or to make such property a safe depository for stolen funds." (Syl. ¶¶ 6, 7, 8.)

The insured in that case had, at various times during three years of his employment in a bank, embezzled about $4,400, which was something more than his salary for the same period of time. He did not keep these funds separate from his honest earnings, and he paid his premiums regularly. None of the premiums paid during that time could be certainly traced to the funds embezzled, except the last payment made by him an hour before he committed suicide. That amount was taken from the money drawer and paid in currency. He had made payments for two years on one policy before he commenced to embezzle funds. We quote the following from the opinion:

"We cannot sanction the proposition that a fiduciary may embezzle large sums of money, use some of it in maintaining life insurance, and that the injured party has no remedy except to recover the amount paid for the premiums, which may be only a small fraction of the amount embezzled. It would open too wide a door for the perpetration of the grossest fraud." (p. 262.)

"Where a partner fraudulently misappropriates the money of his firm, and purchases, in his own name, real estate and policies of life insurance with firm funds, he will, in equity, be charged, by construction, as a trustee for the partnership.

"Where all the premiums are paid with partnership moneys, it makes no difference that the fraud doer, in his lifetime, changed the life policies so as to make them payable to his wife. She, having paid no consideration for them, will be charged as a trustee for the firm, and will be permitted to derive no benefit from them." (*Shaler v. Trowbridge,* 28 N. J. Eq. 595, syl. ¶¶ 1, 2.)

"The conventional relation of trustee and *cestui que trust* or other fiduciary relation is not essential to the jurisdiction of a court of equity to declare and enforce a trust with respect to the property stolen from the beneficial owner." (*Lamb v. Rooney,* 72 Neb. 322, syl. ¶ 2.)

"Where the administrator of an estate commingled the funds of the estate with his private funds, and used said trust funds in the payment of life insurance premiums, making the insurance payable to his wife, the proceeds of said policies are impressed with a trust in favor of the estate, notwithstanding 2 Comp. Laws 1915, § 9345, providing that moneys payable under policies in which the wife is named as beneficiary are not subject to the claims of creditors." (*Bonding & Insurance Co. v. Josselyn,* 224 Mich. 159, syl. ¶ 3.)

New Jersey has an exemption statute on life insurance policies as to amount of annual premium to be paid therefor, and fraud was held to be conclusively inferred when there were creditors existing at the time of the payments of such premiums in excess of that amount.

"Payments made by a debtor, as premiums upon a policy of life insurance upon his own life for the benefit of a wife and child, are essentially gifts to the

beneficiary, and conclusively fraudulent and void as against creditors existing at the time of such payments." (*Merchants and Miners' Transportation Co. v. Borland,* 53 N. J. Eq. 282, syl. ¶ 1.)

Appellant cites *Washington Central Bank v. Hume,* 128 U. S. 195, as particularly applicable in this case. It was there held, without any statute of exemption, that it was not fraudulent for an insolvent husband to pay premiums on a life insurance policy in favor of his wife. No actual fraud was there shown on the part of the insolvent except as it might be inferred from his insolvent condition while making payments of premiums. The second paragraph of the syllabus is as follows:

"A married man may rightfully devote a moderate portion of his earnings to insure his life, and thus make reasonable provision for his family after his decease, without being thereby held to intend to hinder, delay or defraud his creditors, provided no such fraudulent intent is shown to exist, or must be necessarily inferred, from the surrounding circumstances."

In the case at bar we have the fraudulent procuring of the funds partly used for the payment of premiums and the knowledge and notice of the wife, the beneficiary, that the funds they were using for living expenses and for the payment of premiums were obtained in some unusual way and not from their ordinary source of income. The findings show that the wife paid no consideration for these policies, but that they were to her in effect a gift, which would have completely lapsed but for the last two premiums paid with funds fraudulently procured from the plaintiff bank by her husband. To hold that the proceeds of policies thus maintained are, under our statute, exempt to the wife, who is found to have had knowledge and notice that the funds to maintain them were acquired in an unusual manner, is, as was said about the homestead exemption in the Long case, to "turn that which is granted him for the comfort of himself and family into an instrument of fraud."

The life insurance exemption statute, R. S. 1931 Supp. 40-414, like the homestead exemption statute, should be liberally construed, but it is not designed to encourage fraud, nor give to the beneficiary of the policy the proceeds thereof, as a gift, which were saved from complete lapse by funds fraudulently procured by the insured, the beneficiary having had knowledge and notice that such funds were being procured out of the usual and ordinary way, which knowledge and notice made her to a limited extent a party to the fraud. The beneficent provisions of our exemption statute would have to be excessively expanded to apply to a situation where the wife, with such

knowledge and notice, would be enriched by a gift made possible only by funds fraudulently procured by the insured for premiums and living expenses.

The proceeds of the policies thus coming into the hands of the wife became a trust fund and she a trustee of such fund to which the plaintiff bank was equitably entitled.

Appellant contends that even if plaintiff should be held to be entitled to recover, either because she should be held to be a trustee thereof or that the plaintiff should be subrogated to her rights, it should be limited to the sum of two premiums paid out of such fund obtained from the plaintiff, which amounted to $186, as some of the cases above cited have held; but most of them hold that when the fund is deliberately changed into a new investment it will be charged with a trust to the extent of the fund fraudulently procured.

Appellant insists that there was no evidence to support the finding of the trial court that without the payment of these two premiums the policies would have lapsed, because the insured might otherwise, upon his own credit, have procured the amount necessary to meet the premiums, and because there was no evidence as to the intention of the company to forfeit and cancel the policies, as is usually shown by notice to the insured to that effect. The prompt payment of the premiums obviated the necessity of such notice, and the stipulation states, "if the premiums were not paid when due or within thirty days thereafter, subject to statutory notice, the policies would lapse." The six months' provision of the statute (R. S. 1931 Supp. 40-410 and 40-411) has reference to the giving of the thirty-day notice mentioned in the stipulation and makes it impossible to forfeit a policy within six months without giving such notice. To make this effective for the appellant it is necessary to assume that the insurance company would not have given the required notice within the six-months' period. The stipulation, we think, furnishes sufficient evidence to make the policy subject to forfeiture under the statutory provisions, if these two premiums had not been paid.

The other points of error urged by the appellant have been considered, among which were those classified as vested interest of the beneficiary, the creation of an estate in the wife, and the creditor's bill, and we find no error concerning those matters nor in the conclusion reached in the entire case by the trial court.

The judgment is affirmed.

HARVEY and SMITH, JJ., dissenting.