No. 34,201

J. F. Metz, etc., d. b. a. J. F. Metz & Sons, *Appellant,* v. J. E.
Williams and Stella M. Williams, *Appellees.*

(88 P. 2d 1093)

Opinion filed
'April 8, 1939.

*Louis R. Gates* and *Jeff A. Robertson,* both of Kansas City, for the appellant.

*Owen S. Samuel* and *S. S. Spencer,* both of Emporia, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action in the nature of a creditor's bill. Judgment was rendered for defendants, and plaintiff appeals.

The defendants, J. E. Williams and Stella M. Williams, were husband and wife. We shall refer to him as defendant or appellee, and to her as defendant's wife or appellee's wife.

At the trial the facts were stipulated, but at the request of plaintiff the court made findings of fact and conclusions of law.

The record discloses that on April 24, 1935, the plaintiff recovered a judgment against defendant for the sum of $230, in the city court of Kansas City, Kan., and that it remains in full force. In July, 1937, a transcript of the judgment was filed in the district court of Wyandotte county, and a certified copy was filed in the district court of Lyon county. An execution in Lyon county was returned unsatisfied, and proceedings in aid of execution followed, which disclosed no property subject to execution. Shortly thereafter, and in September, 1937, plaintiff filed the instant action to subject to the lien of his judgment a tract of about 135 acres in Lyon county. Defendant, who had been an employee of a railway company, was injured on June 18, 1934, and subsequently brought an action for damages, which action was compromised and settled and

defendant received a net balance of about $5,800 on November 15, 1935, which, without consideration, he transferred to his wife, with directions to invest it in real estate in Lyon county, and about that time, at defendant's direction, advice and consent, his wife purchased the real estate above mentioned. After the purchase defendant and his wife moved on and occupied the real estate as a homestead, and ever since have lived thereon with their children, and claim it as their homestead and as exempt from plaintiff's judgment. The conclusions of law were:

"1. That land described in findings is homestead of defendants, and not subject to judgment claim of plaintiff.

"2. That plaintiff is not entitled as a matter of law to subject homestead purchased by insolvent debtor with nonexempt funds to his existing judgment, unless at the time there are peculiar equities existing in favor of creditor, and this is so even when title to homestead is taken in wife and with the intent at the time to hinder, delay and defraud existing creditors by placing nonexempt money or property in exempt property and beyond reach of creditors.

"3. That there are no peculiar or special equities existing in favor of the judgment creditor in this case. It, therefore, clearly appears to this court that plaintiff is not entitled to subject the homestead to the payment of his judgment."

The appellant complains that the trial court erred in its application of the law to the facts—that it having been shown the defendant had creditors and was insolvent at the time he received the moneys from the railway company, it was a fraud on his creditors to invest the money in real estate, either in his own or in his wife's name, and then claim the same as a homestead and exempt for that reason. It may here be observed that the filing of the transcript of the judgment of the city court (G. S. 1935, 61-907, 60-3480, 60-3481) and of the copy filed in Lyon county (G. S. 1935, 60-3126) created a lien on real estate only, and that the certified copy of the judgment was filed in Lyon county over a year and a half after defendant had purchased the farm.

Appellant relies principally on our decision in *Long Brothers v. Murphy,* 27 Kan. 375. That decision states at length the various facts entering into the entire transaction. Briefly stated, Murphy had been operating a mercantile business. He reached a state where his liabilities amounted to over $9,000, including plaintiffs' claim of about $385. Another creditor, Jacquins, pressed for payment and an arrangement was made whereby he got possession conditionally. Murphy made a trade of his stock, getting some property, real and personal, and the sum of $500 cash with which he satisfied Jacquins.

We need not follow all of this property, but included was a tract which Murphy caused to be conveyed to his wife, and as to this land a claim of exemption from attachment was made on the ground it was a homestead. In discussing that claim, it was said:

"But the homestead claim set up by the husband in the land will not avail him in this proceeding. We do not think that a debtor being absolutely insolvent, and having his creditors pressing him for the payment of their claims, and fully cognizant of his inability to pay such debts, can, to defraud his creditors, transfer possession of goods purchased by him upon credit and take in exchange therefor land, either in his own name or in the name of his wife, and then claim the same as exempt as a homestead against such existing creditors. 'A party cannot turn that which is granted him for the comfort of himself and family, into an instrument of fraud.' (*Pratt v. Burr,* 5 Biss. 36; Thompson on Homesteads, §§ 305-310.)" (p. 380.)

In *Grocer Co. v. Alleman,* 81 Kan. 543, 106 Pac. 460, it appeared Alleman had purchased most of his goods from plaintiff and was indebted to it for $588.15. He traded his stock of merchandise for land and caused the title to be taken in his wife's name. The plaintiff brought suit and attached the land, alleging fraud of the defendant in the creation of the debt and in the attempted disposal of his property. The wife intervened and claimed the property had been deeded to her in satisfaction of a debt of $1,500 due from her husband. There was proof a deed had been made to the husband and not recorded and a second deed had been made to the wife and recorded. The question there considered and determined was upon motion of the interpleader to have the attachment released. Without reciting details, it was held that Alleman's debt to the company was fraudulently contracted, and that the wife, having surrendered only a preëxisting debt, was not in a position to claim she was an innocent purchaser, under the recording acts. In that decision no mention was made of claim of homestead. In an opinion denying a rehearing (*Grocer Co. v. Alleman,* 81 Kan. 900, 106 Pac. 997) it was said:

"The claim of a homestead exemption made by the wife in behalf of the husband was not overlooked by this court, but was not specifically referred to in the original opinion because it was and is deemed to be fully met by the case of *Long Brothers v. Murphy,* 27 Kan. 375." (p. 901.)

Appellant also relies on the early case of *Hunt v. Spencer,* 20 Kan. 126. While in some respects the facts are similar to those now before us, the case is not in point here. There the conveyance attached was from a father to his daughter in pretended satisfaction of a debt which he claimed he owed his wife, who had died some five or six

years before the conveyance was made. There was failure to prove any debt, and the conveyance was treated as a gift, and, under the circumstances, in fraud of creditors. No right of homestead was involved.

A case more nearly analogous was considered in *Tootle, Hanna & Co. v. Stine,* 31 Kan. 66, 1 Pac. 279. There a wife owned a mercantile stock and permitted her husband to carry on the business in his own name. He purchased goods from plaintiff and intermingled them with the other stock. Plaintiff reduced its claim to judgment. Later defendants exchanged the stock of goods, together with the house and lot where they lived, for real estate, the title to which was taken in the wife's name. Plaintiff attempted to subject the latter property to the lien of its judgment and to have the rule in *Long Brothers v. Murphy* applied. This court held the facts were not similar and that decision not controlling. In disposing of the case, it was said:

"No money derived from the sale of the goods was used in the payment of the homestead, and therefore the plaintiffs trace neither the goods they sold, nor any of the proceeds thereof, to the homestead which they seek to subject to the payment of their judgments. If the stock of goods which C. A. Stine had under his control were his absolutely, the plaintiffs would not be entitled to subject a homestead, obtained by exchanging them for it, to the payment of their debts and judgments, if the goods purchased from them upon credit were not exchanged for it and were no part of the purchase consideration. . . . A party may have property subject to execution, but if before there is any levy or lien upon it, such property is exchanged for real estate and actually occupied as a homestead, the homestead is exempt unless existing creditors have rights therein as settled in *Long v. Murphy,* supra." (pp. 68, 69.)

In *McConnell v. Wolcott,* 70 Kan. 375, 78 Pac. 848, an exhaustive review was made as to rights of judgment creditors to have their liens impressed on assets realized from sale of nonexempt property and subsequently invested in a homestead. There it was developed that prior to the judgment defendants had sold property for the express purpose of putting it beyond reach of creditors. While a proceeding in aid of execution was pending, a portion of the proceeds from the sale was invested in a homestead. We shall not discuss the question there presented as to whether the particular moneys invested were proceeds from sale of a previous homestead or of nonexempt property. In disposing of the matter, this court said:

"We do not think that these facts make the investment of the wife's funds in a homestead a fraud upon plaintiff. The prior sale of other real estate with

a view to evade the enforcement of the judgment had no effect upon any question relating to the exemption of the homestead. The plaintiff had no peculiar claim upon the draft with which the homestead was purchased, such as, in the case of *Long Brothers v. Murphy*, 27 Kan. 375, was held to authorize a creditor to hold for the payment of his demand property otherwise exempt. The homestead exemption may be asserted even as to property purchased by an insolvent debtor with the proceeds of nonexempt property, in the absence of any special equity existing in favor of a creditor. (15 A. & E. Encycl. of L., 2d ed., 617.) The fact that the exchange may have been made for the very purpose of acquiring exempt property does not alter the rule. (*Jacoby v. Parkland Distilling Co.*, 41 Minn. 227, 43 N. W. 52; *Paxton v. Sutton*, 53 Neb. 81, 73 N. W. 221, 68 Am. St. Rep. 589.)" (p. 383.)

and held:

"An insolvent debtor may successfully assert a claim of exemption as to a homestead purchased with the proceeds of nonexempt property, where there are no peculiar equities in favor of existing creditors, even though such purchase be made for the very purpose of acquiring property that should constitute a homestead, and as such be beyond the reach of creditors." (Syl. ¶ 2.)

And in the later case of *Exchange State Bank v. Poindexter*, 137 Kan. 101, 19 P. 2d 705, where it was held the wife, to a limited extent, participated in the fraud, and that certain insurance proceeds could not be invested in a homestead to the prejudice of creditors, and where the decision in *Long Brothers v. Murphy*, supra, is quoted from and approved, it is also said:

"The case of *Tootle, Hanna & Co. v. Stine*, 31 Kan. 66, 1 Pac. 279, nicely distinguishes as to the facts in the case just cited by showing that the goods in the last case fraudulently procured by the husband did not enter into the consideration for the purchase of the homestead." (p. 105.)

It appears the rule is that so clearly stated in *McConnell v. Wolcott*, supra. The stipulated facts here clearly disclose that although nonexempt funds of the appellee were invested in a homestead, title to which was taken in the wife's name, there was no showing of any kind that peculiar equities existed in favor of the appellant; the funds were not the result of anything originally procured from him nor did he have any lien thereon when the homestead was purchased. The trial court's conclusions of law were correct.

It may here be noted that in the briefs reference is made to many decisions dealing with rights of creditors, fraudulent conveyances, homestead rights, etc. We have refrained from discussing all of them, for those mentioned are deemed sufficient.

The judgment of the trial court is affirmed.