In re Ralph Eugene WALLACE, Esther F. Wallace, d/b/a G & W Equipment & d/b/a Northland Sales, Debtors.

Bankruptcy No. 383–00021.

United States Bankruptcy Court, C.D. Illinois.

May 5, 1983.

Vernon H. Houchen, Decatur, Ill., Trustee.

Larry Reed, Coburn, Croft & Putzell, St. Louis, Mo., for First Nat. Bank of Kirksville.

James A. Bennett, Ryan, Grabb, Cini & Bennett, Mattoon, Ill., for debtors.

## OPINION AND ORDER

BASIL H. COUTRAKON, Bankruptcy Judge.

This action comes for hearing on Motion of the trustee and of creditor First National Bank of Kirksville, Missouri objecting to the debtor's claim of the cash value of certain insurance policies as exempt property.

The facts are not disputed. In 1975, 1976, and 1977 the debtors purchased insurance policies on the life of debtor Ralph Wallace. Then in April, 1982 both husband and wife borrowed the cash value of the three policies. Later finding themselves insolvent, they sought the advice of their attorney who recommended that they cash a jointly owned certificate of deposit. An early withdrawal penalty was incurred from the face amount of $24,300.00 as the certificate, cashed on December 9, 1982, was not to mature until April 8, 1983.

The problem arose when the proceeds of the certificate were used to repay, *interalia,* the loans on the insurance policies. The last loan was repaid on December 29, 1982. A few days later on January 3, 1983 the debtors executed schedules for a Chapter 7 petition which was filed on January 7, 1983. The repayments were not reported in the schedules. Nonetheless, the Wallaces claimed the cash value of the three life insurance policies as exempt property.

The claim for the cash value of the three policies is based upon the Illinois exemption law, Ill.Rev.Stat.1981, ch. 52, par. 13(f), to wit:

> The following personal property, owned by the debtor is exempt from judgment, attachment or distress for rent: ...
>
> (f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not;

Similarly, the objections to the exemptions are based upon the Illinois exemption law, Ill.Rev.Stat.1981, ch. 52, par. 13(h)(4) (last paragraph), to wit:

If a debtor owns property exempt under this Section and he or she purchased such property with the intent of converting non-exempt property into exempt property or in fraud of his or her creditors, such property shall not be exempt from judgment, attachment or distress for rent. Property acquired within six months of the filing of the petition for bankruptcy shall be presumed to have been acquired in contemplation of bankruptcy.

The first sentence of the paragraph does not set a time period within which a debtor must purchase property, but if the purchase were done with the intent of converting or in fraud of creditors then the exemption fails. The second sentence, however, sets a time period but does not require that property be purchased, just "acquired." The debtors' emphasis on the fact that the insurance policies were purchased several years before the filing of their petition is thus inapposite. It is clear that, by repaying the loans holding the collateral, the debtors *acquired* property free of encumbrance. It is this acquisition that falls into the realm of a presumption created by the State of Illinois to discourage misuse of the very exemptions granted by the state.

The debtors have provided no evidence from which they might extricate themselves from the presumption. Thus, as there was an acquisition within six months of the Petition, the Court must hold that the debtors are presumed to have acquired the cash value of the policies as free collateral in contemplation of bankruptcy.

Nevertheless, even were it not for the state created presumption, there is ample additional law to allow the Court to find a fraud on creditors. Here the Court does not rely upon the first sentence of section 13(h)(4) as there was a purchase, in the strict usage of the word, only in 1975, 1976 and 1977 when there was no allegation of fraudulent conduct or intent. The Court does rely on established federal law. In this regard the debtors have relied upon language from the legislative history to support their view that conversion of assets prior to bankruptcy is not fraudulent:

As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6317; S.Rep. No. 989, 95th Cong. 2d Sess. 76, reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 5862.

It is also true that certain courts have allowed debtors to switch non-exempt assets to exempt assets on the eve of bankruptcy. *In the Matter of Chakos,* 24 F.2d 482 (7th Cir.1928); *Love v. Menick,* 341 F.2d 680 (9th Cir.1965). Nonetheless, it is necessary to examine the reason for the toleration of conversion and the extent of the conversion tolerated.

Colliers provides some insight.

The result which would obtain if debtors were not allowed to convert property into allowable exempt property would be extremely harsh, *especially in those jurisdictions where the exemption allowance is minimal.* This is most relevant to the situation where a state has affirmatively prohibited the availability of the federal exemption alternative (section 522(d)) and the debtor has no choice but to exempt the property allowable under the state of their (sic) domicile. (emphasis supplied) 3 Collier on Bankruptcy ¶ 522.-08 at 522–36 (15th ed. 1982)

The current exemption law in the State of Illinois is not "minimal." More importantly however, it has been "mere conversion" that has been tolerated. When the Fifth Circuit Court of Appeals treated the issue recently it noted that "courts denied exemptions under the Act if there was *extrinsic evidence* of actual intent to defraud (and if the state law permitted disallowance of the exemption for fraud)." (emphasis supplied) *First Texas Savings Association v. Reed,* 700 F.2d 986, CCH § 69,110, (5th Cir.1983). Consequently, as Illinois law does not bar disallowance of an insurance exemption as Texas law would bar disallow-

ance of a homestead exemption, a finding by the Court of sufficient extrinsic evidence will suffice to deny the exemption to the debtors.

There is, in this case, more than the mere conversion of non-exempt to exempt assets that has already condemned the debtors to a state law presumption. As a Certificate of Deposit was cashed early at a substantial penalty and the money therefrom was used within days of the filing of the Petition to repay loans that had been taken on insurance policies some nine months prior to the Petition, the Court finds sufficient extrinsic evidence of actual intent to defraud creditors.

It is therefore ORDERED that the debtors not be allowed to claim as exempt the cash value of their insurance policies to the extent of the repayment on the policies as such are denied by an Illinois law presumption that has not been rebutted and by the Court's finding of extrinsic evidence of intent to defraud creditors.