**In re Harold (NMN) BARASH, Debtor.**

**Bankruptcy No. 83–40468.**

United States Bankruptcy Court,
D. Kansas.

Dec. 20, 1984.

James S. Willis, McDowell, Rice & Smith, Kansas City, Kan., for debtor.

Michael H. Berman, Prairie Village, Kan., for Proctor and Gamble.

Louis A. Huber, III, Dietrich, Davis, Dicus, Rowlands Schmitt & Gorman, Kansas City, Mo., for Stonitch.

Beau Williams, Topeka, Kan., Trustee.

## ORDER

JAMES A. PUSATERI, Bankruptcy Judge.

This matter comes before the Court on objections of the trustee and two creditors to debtor's claimed exemptions consisting of his homestead, one automobile and two insurance policies. After reviewing the testimony and exhibits and hearing arguments of counsel, the Court is ready to rule. The debtor appears in person and by his attorney James S. Willis of McDowell, Rice & Smith, Chartered, Kansas City, Kansas; creditor Proctor and Gamble Distributing Company appears by its attorney

Michael H. Berman, Prairie Village, Kansas; John R. Stonitch, the trustee of creditor Isis Foods, appears in person and by his attorney, Louis A. Huber, III of Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, Missouri; and the trustee, Beau Williams, Topeka, Kansas, appears in person.

The facts are not in dispute and are as follows:

On February 22, 1983 debtor sold publicly traded stocks invested through L. F. Rothschild, Unterberg & Towbin of New York for the sum of $39,451.47. The next day the debtor used the bulk of these funds to pay off the first mortgage on his homestead located at 8419 Reinhardt Lane, Leawood, Kansas. The amount paid to J.C. Nichols Company, the mortgage holder, was $36,296.35 and the remainder of the proceeds from the sale of these stocks was used for the debtor's living expenses.

The debtor purchased Guardian Life Insurance Policy No. 2142306 from Isis Foods, Inc., having a face value of $100,000 on January 5, 1983 for the sum of $4,155.80, which sum was the cash surrender value of the insurance policy on that date. This policy was purchased by Isis Foods, Inc. on the debtor's life in the 1960's. A loan had been taken out against the policy by Isis Foods which the debtor paid off on March 18, 1983 in the amount of $34,908.36. The source of the funds used to pay off this loan was proceeds from a certificate of deposit which the debtor cashed in on March 11, 1982. In debtor's amended schedule B–2, the cash surrender value of this policy is listed as $39,600.

Another insurance policy, Guardsman Life Insurance Policy No. F265002, having a face value of $51,679, was purchased on or about May 23, 1983 with proceeds from the sale of debtor's limited partnership interest in Farm Associates II and Cumberland Investments Group, and from his sale of a 1979 El Dorado Cadillac. The proceeds of these three sales totaled $28,700, and the cash surrender value of the insurance policy is listed in amended schedule B–2 as $25,000.

On May 5, 1983 debtor transferred his interest in the estate of his father, Louis Barash, and his limited partnership interest in Saxon Oil Company to Mobile Telephone Company of America, Inc. for the sum of $22,500 which he used to purchase a 1983 Cadillac automobile.

Debtor filed a chapter 7 petition with accompanying schedules on May 27, 1983, claiming the homestead, a 1983 Cadillac and the described insurance policies as exempt.

The objecting parties contend that it is unlawful to convert nonexempt assets into exempt property on the eve of bankruptcy. This position is unsound.

It is well settled in Kansas that an insolvent debtor may successfully assert a claim of exemption even though the exempt property was purchased with nonexempt funds. *McConnell v. Wolcott,* 70 Kan. 375, Syl. ¶ 2, 78 P. 848 (1904). This is also the general rule elsewhere. *See In Re Reed,* 700 F.2d 986, 990 (5th Cir.1983); *Wudrick v. Clements,* 451 F.2d 988 (9th Cir.1971).

The exception recognized in Kansas is that a debtor may not place property out of the reach of a creditor when the creditor has a "peculiar equity" in the assets converted to exempt property. A "peculiar equity" has been defined as the situation in which funds were originally procured from the creditor or the creditor had a lien on them when the exempt property was purchased. *Metz v. Williams,* 149 Kan. 647, 651, 88 P.2d 1093 (1939). *See also Tootle, Hanna & Co. v. Stine,* 31 Kan. 66, 1 P. 279 (1883).

The objecting parties contend that it is inequitable to allow the debtor to exempt funds from the claims of creditors by investing them in luxury assets such as his home in Leawood, a 1983 Cadillac, and over $150,000 worth of paid up insurance policies having a total cash surrender value of nearly $65,000. They cite several bankruptcy cases in support of their position. In each of the cases, however, the court found evidence of actual fraud other than the mere fact of the conversion of nonexempt to exempt assets. *Matter of Reed,*

700 F.2d 986, 992 (5th Cir.1983); *In Re Zouhar*, 10 B.R. 154, 157 (Bankr.D.N.M. 1981) (cited and explained in *Reed*, 700 F.2d at 991, n. 3); *In Re Wallace*, 30 B.R. 5, 7 (Bankr.C.D.Ill.1983); *Matter of Mehrer*, 2 B.R. 309, 312 (Bankr.D.Wash.1980); *In Re Anderson*, 31 B.R. 635, 8 CBC2d 721, 724 (D.Minn.1982). The Kansas case of *Exchange State Bank v. Poindexter*, 137 Kan. 101, 107, 19 P.2d 705 (1933), also involved a finding of actual fraud.

It may be that the cases cited from other jurisdictions involved acts by the debtor similar to those present in this case. Those cases, however, were not decided under Kansas law. Actual fraud by a debtor in purchasing exempt assets has been narrowly defined in the Kansas case law and this Court believes it is bound by the decisions. The debtor's actions do not fit the Kansas definition of fraud.

None of the assets at issue here were obtained with funds procured from or secured to a creditor. There has been no showing of an actual intent to defraud; in this the objecting creditors have failed to sustain their burden. Therefore, the debtor cannot be denied the benefit of these exemptions on the basis of fraud. This result is not altered by the 1984 amendment to K.S.A. § 40-414 which states that the insurance exemption is not available when the policy holder files bankruptcy within one year of issuance of the policy if the policy was obtained by the policy holder for the purpose of defrauding one or more of his creditors. Act of May 7, 1984, ch. 170, 1984 Kan.Sess.Laws 821, 822. The inclusion of the last clause in the statute defeats any presumption of fraud that the legislature may have intended by the first clause, and has the effect of ratifying the existing case law.

█ The only possible impediment to debtor's claimed exemption would be if the insurance policies in question were shown not to be policies of insurance within the meaning of K.S.A. § 40-414. This would be the case if the circumstances surrounding the purchase of the policies showed that the purchaser had no intent to provide for payment to his beneficiaries a sum cer-

tain, in the event of his untimely death, in return for moderate premium payments. For example, an endowment policy payable to the insured does not qualify as a policy of insurance, *In Re Bray*, 8 F.Supp. 761, 763 (D.N.H.1934); nor do disability benefits payable to the insured, *Legg v. St. John*, 296 U.S. 489, 56 S.Ct. 336 80 L.Ed. 345, (1936). Also an annuity contract that pays periodically during the life of the annuitant or during a term fixed by contract with a death benefit representing a payment of the unpaid portion of the purchaser's investment is not an insurance policy. *In Re Howerton*, 21 B.R. 621, 9 BCD 296 (Bankr. N.D.Tex.1982).

The policies at issue in this case are payable to the members of the debtor's family and the benefit to be paid is considerably more than the cost of the policies. There is no showing that the policies were intended as anything other than protection for the debtor's family and therefore the objections to the claimed insurance exemption as well as to the homestead and automobile are overruled.

IT IS SO ORDERED.